## VLIET and others vs. CAMP.

A sealed warrant of attorney to confess judgment upon a note, described the note by its date, amount and rate of interest, but in the clause "the subscribers being justly indebted ——— upon a certain note," there was a blank after the word "indebted," and after the words " payable to ———," in the description of the note, another blank, and after the words "confess a judgment in favor of ———," another blank. After the delivery of the warrant, the holder, without the knowledge of the makers, filled up the first blank by inserting, "to the holders thereof," and the second, by inserting the names of the payees of the note, and the third, by inserting the word "holders." In an action to vacate a judgment entered under such warrant, on the ground that material alterations had been made in the warrant by the holder, after its execution, it being clear from the evidence that the warrant, which was drawn upon a printed form, was delivered with the intention and implied understanding that the blanks should be subsequently filled by the holder with suitable words to make it effectual for the purpose intended, and no mistake or fraud having occurred in filling them, it was *held*, that the plaintiffs were not entitled to the relief demanded.

The law of the place of payment does not necessarily govern the rate of interest which may be contracted for. Where the law of the place where the parties reside, allows a greater rate, they may contract with reference to that law; and if the contract is valid according to that law, it will not be declared usurious because it exceeds the rate allowed by the law of the place of payment.

APPEAL from the Circuit Court for *Milwaukee* County. This was an action by *Jasper Vliet, D. H. Richards, Garret Vliet* and *John B. Smith*, to vacate a judgment which had been entered against them in the circuit court of Milwaukee county, in favor of *Camp*, under a warrant of attorney, or to have satisfaction of it entered, upon the ground that the warrant of attorney had been materially altered and added to after its execution, without their knowledge or consent, and so was not their deed at the time the judgment was entered under it; and upon the grounds, also, that the note upon which the judgment was rendered, was payable in New York, and was void because given upon a loan of money at a rate of interest not allowed by the law of that state; and that *Camp* had converted to his own use certain bonds which had been pledged as a security for the payment of the note, and which were of sufficient value to pay it. The warrant of attorney was signed and sealed by the plaintiffs above named, bore date July 7, 1857, and at the time judgment was rendered under it, was in the following words: "Know all men by these presents, that whereas the subscribers, being justly indebted, as indorsers [to the holders thereof] upon a certain promissory note of even date herewith, for the sum of three thousand dollars, bearing interest from date at the rate of ten per cent. per annum after due, and payable to [*Jasper Vliet, D. H. Richards* and *Garret Vliet*] : Now therefore, in consideration of the premises, we do hereby constitute and appoint O. H. Waldo, or any attorney, &c., for and in our name &c., at any time after the said note becomes due, to waive service of process, and confess a judgment in favor of said [holders], or assigns, upon the said note, for the above sum," &c. The note on which judgment was entered, was a separate instrument on the same sheet of paper, executed by the Milwaukee & Horicon Railroad Company as maker, for $3000, dated Milwaukee, July 7, 1857, payable to the order of *Jasper Vliet, D. H. Richards* and *Garret Vliet*, at the American Exchange Bank in New York, with interest at ten per cent. per annum after due, until paid, and indorsed by the payees and by *John B. Smith*; with a clause stating that the makers had deposited with the payees as security,

*June Term, 1860.*

VLIET et al. v. CAMP.

$6000 of the bonds of the town of Ceresco, with authority to sell the same either at public or private sale in case of the non-payment of the note, &c. It was admitted, upon the trial, that the words in the warrant which are inclosed in brackets, were inserted in it after it came into the hands of the defendant *Camp*, with his knowledge, and without the knowledge of the plaintiffs. The agent of the railroad company who negotiated the loan from one Styles (who afterwards assigned the note to *Camp*), testified that he agreed to give Styles a judgment note with the names of *Jasper Vliet, D. H. Richards* and *Garret Vliet* as indorsers and as signers of the warrant of attorney, and that *J. B. Smith* should indorse the note and sign the warrant in New York; that he told the payees of this arrangement; and that the agreement with Styles was, that the warrant of attorney should be given as indicated by the printed blank which Styles handed to him, and which was used for that purpose. Some evidence was introduced, tending to show a practice in Milwaukee of delivering such instruments with the printer's blanks unfilled, with the understanding that they were subsequently to be filled by the holder.

As to the defense of usury, the proof tended to show that the indorsers of the note were all citizens of Wisconsin; that the note was executed in Wisconsin by all the parties except *Smith*, who endorsed it in New York, where he was staying temporarily on business; and that the consideration of the note was a loan of money to the Milwaukee & Horicon Railroad Company, which was a Wisconsin corporation, and used the money in this state. Evidence was introduced as to the usury law of New York, but it is omitted, as the court held that the note was governed by the law of this state.

As to the alleged conversion of the bonds, the proof tended to show that they had been offered at public sale after the maturity of the note, but were bid off by an agent of *Camp*, who produced them upon the trial and offered to deliver them to the plaintiffs or to the company, as the court should direct, upon payment of the principal and interest of the note upon which the judgment was rendered.

The circuit court was of opinion that the alterations made

June Term, 1860.

Vliet et al.
v.
Camp.

in the warrant after its delivery, were material, and that such alterations made by the holder of the warrant, without the assent of the other parties, rendered the warrant void, and that the judgment entered thereon should be vacated. Motion for a new trial overruled, and judgment for the plaintiffs.

*O. H. Waldo*, for appellant:

1. The alterations made in the warrant are immaterial. *Camp* could have entered judgment thereunder, without the insertion of the words actually inserted. (1.) There was no patent ambiguity or uncertainty in the description of the note contained in the warrant, and until it be shown that there was another note corresponding to that description, it is not necessary to prove that this is the note intended. *Shortrede vs. Cheek*, 1 Ad. & Ellis, 57 ; *Fish vs. Hubbard's* Adm'rs, 21 Wend., 651–6 ; *Woolley vs. Constant*, 4 Johns., 55. (2.) The recital that the makers of the warrant were indebted as indorsers on said note, and the authority granted to confess judgment in favor of the assigns thereof, are sufficient to authorize the entry of judgment, without the added words " to the holders thereof," or " holders." (3.) The respondents are identified as the indorsers of the note and the persons against whom judgment was authorized to be entered, by being described in the warrant as such indorsers, and as "the subscribers hereto." 2. An immaterial alteration does not avoid the instrument unless it be fraudulent. Smith on Contracts, 59, note ; *Smith vs. Crooker*, 5 Mass., 540 ; *Catton vs. Simpson*, 8 Ad. & Ellis, 136 ; *Miller vs. Gilleland*, 19 Pa. St., 119 ; *Getty vs. Shearer*, 20 id., 16 ; *Master vs. Miller*, 1 Smith's L. C., 965–6, notes ; Chitty on Contracts, 132 ; 10 Conn., 192 ; 2 Barb. Ch. R., 120 ; 15 Johns., 293 ; 1 Wend., 659 ; 18 Pick., 172 ; 9 Mass., 307 ; 40 Vt., 217 ; 6 id., 519 ; 11 id., 309 ; 3 Met., 103–9 ; 1 N. H., 145 ; 2 id., 453 ; 3 Barr, 326. 3. By consent of the parties an instrument may be altered even in a material part, without vitiating it. Smith on Contracts, 58, note ; *Master vs. Miller*, 1 Smith's L. C., 963 ; *Speake vs. United States*, 9 Cranch, 28 ; *Smith vs. Crooker*, 5 Mass., 538 ; *Willard vs. Clark*, 7 Met., 437 ; *Tomkins vs. Corwin*, 9 Cow., 255, &c., &c. And this consent may be *implied* from all the circumstances of the case, from

June Term, 1860.

VLIET et al.
v.
CAMP.

custom, from the nature of the alteration and from other evidence. *Master vs. Miller*, 2 Smith's L. C., 964 ; Smith on Contracts, 59, note ; *Texira vs. Evans*, 1 Anst., 228 (the authority of which leading case is followed in most of the states of this country) ; *Hale vs. Russ*, 1 Greenl., 334 ; *Rich. Man. Co. vs. Davis*, 7 Blackf., 412 ; *Bank vs. Curry*, 2 Dana, 142 ; *Eagleton vs. Gutteridge*, 1 Mees. & Wel., 465 ; 10 Serg. & R., 171 ; *Markham vs. Gonaston*, Moore, 547 ; 2 Pen. & Watts, 132 ; 19 Johns., 391 ; 2 Barb. Ch. R., 123, note ; 4 McCord, 239 ; 2 Washb., 164 ; 21 How., 575 ; 6 S. & R., 308 ; 17 id., 438 ; 2 Pa., 132, and all the cases cited in *Hibblewhite vs. Mc Morine*, 6 Excq., 200—216 (4 Jur., 796). When blanks are left obviously for the purpose of allowing the insertion of something to render the instrument complete, it is always a question of fact whether they have been filled in accordance with the intention of the parties ; and if the parties execute and deliver the instrument, knowing that it contains blanks for the insertion of particular names or other words, they must be considered as agreeing that they be so filled. Smith's L. C. 962, note ; *Cariss vs. Tattersall*, 2 Man. & Gr., 890 ; 5 Mass., 539 ; 2 Dana, 142 ; *Byrom vs. Thompson*, 11 Ad. & E., 31 ; *Kershaw vs. Cox*, 3 Esp., 246 ; *Jacobs vs. Hart*, 6 M. & S., 142 ; *Wright vs. Jasharo*, 1 Dowl., N. S., 802 ; *Stone vs. Wilson*, 4 McCord, 203 ; *Fulton's case*, 7 Cow., 484 ; *Whiting vs. Daniel*, 1 Hen. & Mun., 291 ; Edwards on Bill and Notes, 95 ; *Clute vs. Small*, 17 Wend., 241 ; 6 M. & S., 142 ; 7 Cow., 336 ; 10 Wend., 92 ; 11 Mees. & Wel., 465. 4. As to the right of the parties to contract for interest at the rate allowed by the laws of this state, counsel cited among other authorities, *Depau vs. Humphreys*, 20 Martin, 1 ; *Chapman vs. Robertson*, 6 Paige, 627 ; *Atwater vs. Roelofson*, 4 Am. Law Reg., 549 ; 2 Pars. on Con., 96, and note, and cases there cited. (2). Though the note were a New York contract, it would be valid. The N. Y. Act of April 6, 1850, repealed the usury laws of that state, so far as they relate to contracts by corporations. 15 N. Y. R., 85, 150–2, 254. This act applies to foreign corporations. 17 N. Y. R., 51. (3). The charter of the Mil. & Hor. R. R. Co. enables them to borrow money at any rate of interest. Acts of 1852, p. 682. (4).

The contract of the indorser is governed by the law of the place where the same was made, and where he resided. Edw. on Bills, &c., 185–6, 261, 263–4; 4 Johns., 119; 12 id., 142; *Pomery vs. Slacum*, 6 Cranch, 21, 221; 3 Mass., 77; 13 id., 153; 2 Strange, 733; 5 East, 124; *Hunter vs. Potts*, 4 Term Rep., 182.

*Henry F. Prentiss* and *A. D. Smith*, for respondents:

1. The warrant of attorney, before the alterations were made, conferred no power to enter judgment against the plaintiff, because it did not state to whom they were indebted; nor to whom or to whose order the note was payable; nor by whom it was made; nor when and where payable; nor to whom judgment was to be confessed. An authority to confess judgment without process must be clear and explicit, and must be strictly pursued. *Man. Bk. vs. St. John*, 5 Hill, 497; *Gee vs. Lane*, 15 East, 592; *Dilley vs. Van Wie*, 6 Wis., 212. 2. If Mason, who represented the plaintiffs in the original transaction, or if even *Smith* had filled the blanks before delivery, the case would fall within the decisions cited for the appellant. But the alterations were not made by an authorized agent of the plaintiffs, nor with their knowledge. 3. The warrant, having been altered in material points after its execution, without the authority of the makers, is void. *Masters vs. Miller*, 4 Term Rep., 320; *Powell vs. Divett*, 15 East, 28; *Davidson vs. Cooper*, 11 Mees. & Wel., 799; *Calvert vs. Baker*, 4 id., 416; *Pigot's Case*, 11 Coke, 47; *Waring vs. Smyth*, 2 Barb. Ch. R., 124; *Lewis vs. Payne*, 8 Cow., 71; *Jackson vs. Gould*, 7 Wend., 364; *Herrick vs. Malin*, 22 Wend., 387; *Jackson vs. Jacoby*, 9 Cow., 125; *Breese vs. Sanderson*, Territorial Rep.; *Merritt vs. Lowe*, Burnett, 185. Without the consent of all parties, the most trifling alterations cannot lawfully be made. *Marshall vs. Gougler*, 10 Serg. & Rawle, 164. 4. The contract was void for usury by the law of New York. Story on Conflict of Laws, §§ 298 et seq.; Story on Contracts, § 654; *Smith vs. Smith*, 2 Johns., 235; *Thompson vs. Ketcham*, 4 id., 285; *Hicks vs. Brown*, 12 id., 142; *Ludlow vs. Van Rensselaer*, 1 id., 94; *Jacks vs. Nichols*, 5 Barb., 38. In general, the validity of a contract depends on the law of the place where it is to be

June Term,
1860.

Vliet et al.
v.
Camp.

January 2.

performed.   *Hyde vs. Goodman,* 3 Coms., 266; *Commonwealth vs. Bassford,* 6 Hill, 526; 3 Wheat., 184; 13 Peters, 65.

*By the Court,* Dixon, C. J.   We are unable to discover anything in the nature of a warrant of attorney designed as an authority for the confession and entry of a judgment for debt, or the purposes for which it is executed, which renders it more solemn or sacred than other instruments by which the rights and obligations of parties are to be determined, or which distinguishes it from, or takes it out of the operation of those rules which govern the construction and application of written contracts in general.   Certainly the common law recognizes no distinction of the kind.   Like other written agreements, it must be sufficiently full and definite to indicate the intention of the maker.   But no particular form of words is required, and no rigid ceremony in or about its execution or delivery is to be observed.   It need not be under seal.   Any writing signed by the party, the language of which makes the object in view clear and certain, and accurately defines the power delegated, is sufficient.   1 Tidd's Prac., 546; 1 Chitty's do., 707; 5 Taunt., 264; 4 East, 431.   The fact that it constitutes the foundation or authority upon which the appearance of the maker is to be entered at the suit of another before a court of justice, and the judgment confessed against him for a specified sum, makes it no more momentous or important to him, and indeed hardly so much so, as if it were a deed or other instrument by which he directly and at once parts with an equal amount of property.   The validity of either must depend upon whether it was fairly and honestly obtained; and either may be set aside for fraud or circumvention.   Neither is it influenced by the consideration that it is subsequently to become a part of a judicial record, nor that it has, at the time of investigation, performed its office and become so in fact.   These are things which may happen to any instrument.   The statute does not affect it either in form or substance, excepting so far as it requires it to be distinct from the bond or contract evidencing the demand for which judgment is to be confessed. It declares that it shall be in some proper instrument, that

is, some instrument adapted or suited to carrying out the will and intention of the maker. To determine whether it be such an instrument, we are to look to the rules and principles of the common law. We cannot, therefore, adopt the theory of the counsel for the respondent, and say that we are to interpret or treat the instrument under consideration upon principles different from those which are applied to other instruments in writing.

As relates to the alterations which were made in the warrant of attorney; after it came into the possession of the appellant, the view which we have taken of them renders it unnecessary for us to determine whether they are such as are denominated material or immaterial. Admitting them to be of the former class, our conclusion is the same. The evidence contained in the record fully satisfies me that the respondents executed and delivered the warrant of attorney in its printed form, the printer's blanks being in part unfilled, with the understanding that such blanks were afterwards to be supplied by the holder or party interested, with proper and suitable words to make the instrument complete and effectual for the purposes intended. We do not say that we find any express understanding to that effect, but it is implied from an abundance of the most convincing facts and circumstances. It is hardly controverted on their part, but their case in this regard is made to rest on the more technical ground that any alteration of an instrument, in a material part, made after delivery, by a party in interest, without the assent of the other parties, avoids it. This is the ground upon which the case was decided by the circuit court, as appears by the opinion of the judge, which is sent up with the record. It is unnecessary therefore to enter upon a minute comparison or analysis of the testimony of the witnesses and other evidence upon this subject. It is sufficient to say that from the condition of the instrument at the time of its delivery, the nature of the blanks which were left for the purpose of allowing future insertions, the fact that the more material and important ones, such as the date, amount and rate of interest of the note, were in fact filled, the circumstance that the respondents, one of whom was upon the stand as a wit-

ness, do not deny that such was their intention, and the proof that the practice of delivering such instruments with the printer's blanks unfilled, with the understanding that they were subsequently to be filled by the holder, very generally prevailed in Milwaukee at the time, make it perfectly clear to us that such was the understanding on the part of the respondents. Upon this state of facts we are of opinion that it was not unlawful or improper for the appellant to complete the instrument in accordance with the original intention of the parties. It was but doing what the respondents, by their previous acts, if not words, had most plainly and unmistakably authorized and directed. No mistake or fraud is alleged to have occurred in the filling up of the blanks. It is not pretended that the implied instructions were not faithfully fulfilled, nor that the instrument as completed is not what it was originally designed to be; but the respondents seek to take advantage of a technical principle to set aside and defeat a judgment which the facts show to be just and fair. Under such circumstances we must confess that the claim of the respondents appears to us rather ungracious.

We do not propose to enter into a review of any of the numerous authorities which are to be found on this subject. The general doctrine is well established, that an alteration may, by consent of all parties, be made after as well as before execution and delivery, and that such consent being shown, the instrument as altered, will be held to be valid. It is thus stated by Judge STORY in *Speake vs. The United States*, 9 Cranch, 28: "It is clear, at the common law, that an alteration or addition in a deed, as by adding a new obligor, or an erasure in a deed, as by striking out an obligor, if done with the consent and concurrence of all the parties to the deed, does not avoid it. And this principle equally applies, whether the alteration or erasure be made in pursuance of an agreement and consent prior or subsequent to the execution of the deed; and the cases in the books in which erasures, interlineations and alterations in deeds have been held to avoid them, will be found, on examination, to have been cases in which no such consent had been given." Such

June Term,
1860.

Vliet et al.
v.
Camp.

alteration is considered equivalent to a re-execution and re-delivery, and the instrument as altered is considered as taking effect from that time. The only apparent exception to this rule is in those cases where the deed, to be effectual, must be acknowledged, and then it is held that a re-acknowledgment is necessary. No distinction is made, and we can see no good ground for one, between alterations thus made by the parties themselves, or one of them, and those which are made by a stranger to the contract. When it is made by a person in interest and to his own advantage, it may induce us to scrutinize the transaction more closely, but the consent being clearly proven, it makes no difference who made it.

Cases where such alterations have been made upon express consent, are very frequent. Indeed, many are such that they were susceptible of no other proof, for they are instances where the entire deed or contract of the parties was filled up over their seals and signatures attached to a piece of blank paper. Many of them hold that consent may be implied as well as expressed, and appear to take no distinction in this respect between material and immaterial alterations. Others hold that assent can only be implied where the alteration is immaterial; and others again, that the circumstance of the alteration being immaterial, authorizes a presumption in law of an authority or consent to make it. Without attempting to examine or discuss the correctness of these different theories, or to determine how far the doctrine of implied consent may with safety and propriety be applied to material alterations, we say, that conceding those under consideration to have been such, we conceive it perfectly safe and proper to apply it to the present case. The facts and circumstances in evidence to this point are clearly as cogent and conclusive as if there had been the testimony of one or more witnesses to verbal directions of the same kind ; and if there had, the question of the warrant of attorney being thereby made void, could not, according to the authorities, have been successfully raised.

In making this disposition of the question, we place no reliance whatever on the practice which prevailed in Milwau-

kee, as constituting a local custom which is to influence or guide the decision of courts. As a custom, it cannot and ought not to be upheld. It is a most slovenly, loose and censurable practice, and one which we do not desire to approve. But the question with us is, whether the warrant, under the circumstances, is valid. In deciding it, we are to be governed by the law as we find it. And in doing so, we cannot vary our decision because we may thereby indirectly or incidentally countenance or encourage a practice which we would otherwise heartily condemn. We consider the practice only as a circumstance tending to throw light upon the real intention of the parties.

The other questions presented by the record are of less importance. That of usury has been already decided by this court. *Richards vs. Globe Bank*, 12 Wis., 692. See also *Newman vs. Kershaw*, 10 Wis., 333. In the first named case, it was decided that the law of the place of payment does not necessarily govern or fix the rate of interest; but that when the law of the place where the parties reside allows a greater or different rate, the parties may be permitted to contract with reference to it; and if it appears that they did so contract, and the contract is valid according to that law, it will not be declared usurious and void because it exceeds the rate allowed by the law of the place of payment. In this case, there can be no doubt that the parties intended to be governed by the laws of this state; and as the charter of the company, the maker of the note, allowed it to borrow money upon any rate of interest which might be agreed, no question of usury can be made. (Sec. 21, chap. 450, Laws of 1852.)

The alleged conversion of the town bonds pledged as collateral security for the payment of the note, is not made out. No sale was in fact made. Nothing was done which impaired or cut off the pledgor's right of redemption. The bonds have always remained in the hands of the holder of the note, subject to redemption on payment of the principal sum loaned and interest, which is all that could be reasonably and legally asked or expected.

June Term, 1860.

RACINE CO. BK.
v.
KEEP et al.

The judgment of the circuit court is reversed, and the cause remanded with directions that the suit be dismissed, with costs.