CASE 7—PETITION ORDINARY—MARCH 11.

# Wm. Glenny Glass Co. v. Taylor, &c.

APPEAL FROM BRACKEN CIRCUIT COURT.

1. PLEA OF NO CONSIDERATION—WHEN NOT AVAILABLE.—Where the evidence discloses that a note was executed to the payee by the two obligors, who were brother and sister, for the purpose of enabling the payee to raise money for the use of one of the obligors, and the money was so raised and used, the plea of no consideration is not available.

2. EXECUTION OF NOTE—CONTRACT—INTENTION OF PARTIES MUST CONTROL IN DETERMINING WHAT LAW GOVERNS THEIR RIGHTS.— Where a note is made payable at a bank in New York, but was executed by one obligor in Washington, D. C., and the other in Kentucky, and mailed to the payee in New York, and afterwards assigned to Ohio parties, the law of Kentucky controls and not the law of New York. The intention of the parties must control in determining what law is to govern their rights under the contract, whether the law of the place where the contract was entered into or the law of the place where it was to be performed.

3. PRACTICE—WHEN MOTION TO DISMISS TOO LATE.—After a case has been argued and submitted, it is too late for the plaintiff to enter a motion for dismissal.

ED. DAUM, H. C. WEAVER AND WM. H. HOLT FOR APPELLANT.

1. When a note is given in one State, payable in another, the parties may contract with a view to the interest laws in either; and where under the laws of one of the States the contract is valid, and void under the laws of the other, the courts will assume they were contracting with reference to the laws of the State where the contract is valid. (2 Kent, p. 260; 28 Fed. Rep., 265; Security Co., v. Vader, 96 U. S., 51; Cromwell v. County of Sac, 3 Pinney, 78; Fisher v. Otis, 19 S. C., 583; Thornton v. Dean, 11 Iowa, 1; Butter v. Olds, 13 Wis., 198; 81 N. Y., 566; 91. N. Y., 124.)

2. Where the rate of interest at the place of contract differs from the rate at the place of performance, the parties may contract for either rate, and the contract will control; or they may agree upon the rate of the place where the contract is made. (Cromwell v. County of Sac, 96 U. S., 62; Butters v. Olds, 11 Ia., 1; Fisher v. Otis, 3 Pinney, 78.)

GEORGE DONIPHAN and THOS. H. HINES for appellees.

1. If by the law of the State where a contract is made it is legal, it is
   valid everywhere. But the law of the place where it is made
   yields in some respects to that of the place of performance, and
   it will be presumed that the contract was made with reference
   to and in view of the laws of the place of performance. (Dan-
   iels on Negotiable Instruments, sec. 879; Andrews v. Pond, 13
   Pet., 65.)

2. An agreement to perform an act at a particular place is presumed
   to be made with reference to the law of the place of performance;
   and a contract referring by its own terms to a particular place
   where it is to be performed should receive its construction and
   legal character from the laws of that place. (Short v. Trabue,
   4 Met., 401; 7 B. M., 577; 8 Bush, 199; 14 B. M., 448;
   8 B. M., 307; Story's Conflict of Laws, secs. 233 and 234; 6 Pet.,
   203.)

3. In McAllister v. Smith, 17 Ill., 320 (65 Am. Dec., 651), it was held
   that a bill drawn in Illinois and made payable in New York,
   which was void under the laws of New York, was also void in
   Illinois.

CHIEF JUSTICE PRYOR delivered the opinion of the court.

This action at law was instituted by the appellant, the
William Glenny Glass Co. against the appellees, Mary D.
and Chas. Taylor, in the Bracken Circuit Court on the fol-
lowing note:

"$200.00                    Washington, D. C., Jan. 2, 1891.

"Eighteen months after date we, jointly and severally,
promise to pay Margaret E. B. Thompson, or order, two hun-
dred dollars for value received, with interest at eight per
cent. per annum until paid. Payable at the Fourth National
Bank, New York, N. Y.         "Thomas P. Dudley,

                              "Mary D. Bradford."

At the time the note was executed by Mary D. Bradford
she was a single woman, but subsequently married co-de-
fendant, Chas. Taylor, who, as is alleged, by reason of his
marriage, received property, cash, notes. etc., more than :

sufficient to pay the note in controversy. It is also alleged that the wife owned a tract of land out of which the debt could be made. They ask for judgment and all proper relief.

The defendants resist the recovery on two grounds. The first is a want of consideration; the second that, by the laws of New York, where the note was made payable, the exaction or the agreement to pay a greater rate of interest than six per cent. renders the note or obligation void, and such seems to have been the statute of that State when this note was executed and at the time of the institution of this suit.

As to the plea of no consideration, it appears from the testimony that the principal obligor in the note, Thomas P. Dudley, is a brother of Mary D. Bradford (now Taylor), and the note was executed and forwarded by mail to Mrs. Thompson, in New York City, and payable at the Fourth National Bank, to enable the latter, Mrs. Thompson, to raise means for Dudley, who, at that time, was in pecuniary trouble, or in such a condition as required pecuniary aid. Mrs. Taylor says the money raised on the note was used by Mrs. Thompson for her own purposes. her brother receiving no benefit from the proceeds. She only speaks of what she herself knew in regard to the transaction, and evidently had no means of knowing whether the money was or not applied to the benefit of her brother.

The appellant, the assignee of the note, stated that Mrs. Thompson said or wrote to the effect that she wanted the money to aid her in getting a pension, and she admits that she so wrote, but swears that every dollar of the two hundred was applied to the use and benefit of the appellee's brother; and if she was making a false statement it could have been easily disproved by him. He was never examined as a witness, and, with this positive proof of Mrs.

Thompson, we are satisfied the money received was applied as intended by all the parties to the paper.

The consideration being clearly shown, it is only necessary to determine whether or not the judgment below is sustained by the evidence. There was no separation of the legal findings from the findings of fact; but if there was no evidence for the defense, the judgment for the appellees must be reversed.

The brother, for whose benefit the note was executed, signed and delivered the note in Washington City, and, by Mrs. Thompson, was enclosed to his sister at her postoffice in the county of Bracken, in this State, where she resided, and there signed and forwarded to Mrs. Thompson, in New York City.

It is well established that a contract, valid at the place where it is made, is valid everywhere; and also well settled that, if executed with a view to and in reference to the law of the place of performance, it is to be governed by the law of the place of performance; and, upon this recognized doctrine, it was held below that, although there was a bona fide consideration for the execution of the note, and the proceeds actually applied as intended by all of the parties to the paper, as it was made payable at the Fourth National Bank, in New York, and was enclosed in a letter to the payee directed to her in that city, it was an obligation to be controlled, so far as its validity was concerned, by the statute of that State, that provides: "All bonds, bills, notes, etc., * * * whereupon or whereby there shall be reserved or taken, secured or agreed to be reserved or taken, any greater sum or value for the loan or forbearance of any money, etc., than as above prescribed (which is six per cent.), shall be void," etc. Not only so; by another sec-

tion of the statute, the chancellor, upon application, will cancel the note and require it to be delivered over.

This court will take judicial notice of the rate of interest in this State, and the law applicable to contracts where a greater sum than six per cent. interest is agreed to be paid, and will also presume, in the absence of any plea and proof to the contrary, that the note was valid under the law of the place where it was executed by Dudley, and the purpose being to raise money for the latter's benefit, and there being no indebtedness created in New York by the obligors to the payee in the note, it must be assumed from the evidence that the parties never contemplated that the law of the State where the note was to be paid should determine its validity. The money was not in fact advanced by the payee on the note, but was assigned to the appellant, who resided in the State of Ohio, and the money paid by it to Mrs. Thompson for the note paid over to Dudley, for whose benefit it was executed.

The mere fact that the note was made payable in New York and received by the payee in that city, under the circumstances of this case, is not sufficient evidence of the fact that it was intended the law of that State should govern, or its validity to be tested by the statute in regard to usury. We will not assume, nor does the evidence authorize such a conclusion, that the brother living in Washington City and executing the note in that place, and his sister executing the note in Bracken county, Ky., regarded or expected their liability to be determined by the statute of New York, and when sued in Kentucky could defeat the recovery upon the paper on the ground that the charge of the extra interest rendered the entire obligation void.

The note, when signed by Mary D. Bradford in Kentucky, and inclosed to the payee, was an executed instrument, as

much so as if the payee had been present and the note delivered to her in Kentucky.

As said in Wayne County Savings Bank v. Lord, 81 New York, 572, "it can not be contended that a party who goes into another State, and there makes an agreement with a citizen of that State for the loan or forbearance of money, can render his obligation void by making it payable in another State, according to whose laws the contract would be usurious."

In the case of Vliet v. Camp, 13 Wis., 198, it is said:" The law of the place of payment does not necessarily govern the rate of interest which may be contracted for."

It is a question of intention, and all the facts must be considered in order to determine what law the parties looked to as controlling their rights under the contract, whether the law of the place where the contract was entered into or the law of the place where it was to be performed; nor is the rule here recognized in conflict with the cases heretofore decided by this court in Goddin v. Shipley, 7 B. M., 575; Hyatt v. Bank of Kentucky, 8 Bush, 193; Young v. Harris, 14 B. M., 447.

Ordinarily the place of performance fixes the nature and interpretation to be given the contract, and, as said in the case of Young v. Harris, if the payee of a note residing in Covington, Ky., endorses it in blank at that place and puts it in his pocket, and after this goes to Cincinnati, and there sells and delivers it to another, who pays him the consideration, the mere-physical act of endorsement, although performed in Covington, forms no contract, but it is the transaction in Cincinnati that creates the contract, and, therefore, the law of Ohio must govern.

In this case we are asked to forfeit the principal and interest of a note executed out of the State of New York, and

doubtless the proceeds used out of that State, in the hands of one to whom it was assigned, by a payee having no beneficial interest in the proceeds, but who had agreed to become the payee and perhaps to advance the money to meet the necessities of one of the obligors, who was the brother of the other, and to do so would be, in our opinion, to enforce a law of a State other than that in which the note was fully executed, and by which (the Kentucky law) this legal effect of the transaction must be governed.

It is contended that the appellant in its reply failed to controvert the statement in the answer that the note was executed with reference to the law of New York. The reply avers that the note was executed by the brother in Washington City, and by the sister in the State of Kentucky, and without any reference whatever to the laws of the State of New York, and that the law of the latter State had nothing to do with the execution and delivery of the paper, save that it was made payable at a bank in that city.

The isues were fully made up, and while we are satisfied the court below determined this case upon the question as to whether the law of New York or the law of this State governed, as his view of the law is not in the record as a separate finding, we must dispose of the case as if it had been tried by a jury without instructions, or the instructions omitted from the record; and if the evidence is conflicting the judgment must be affirmed.

We have already indicated that the testimony is all one way, and upon the facts the judgment should have been for the plaintiff.

After the case had been argued and submitted the appellant, seeing that the inclination of the court was to decide for the defendant, asked leave to discontinue the case; and this was refused, and properly, as held by this court in the

case of Vertrees' adm'r v. R. Co., 95 Ky., 314.    It is too late after submission to enter such a motion.

As the appellee made some effort to show an improper application of this money, as the case must be retried, there is nothing to prevent a full and fair hearing on this branch of the controversy.

Judgment reversed and remanded for a new trial and for proceedings consistent with this opinion.