## Rose et al. v. Finley's Executor.

(Decided Oct. 20, 1933.)

770

R. C. BROWNING, B. B. SNYDER, C. B. UPTON and R. L. POPE for appellants.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

H. F. Finley died testate and a citizen and resident of Whitley County, Ky., on October 16, 1909. Some

years prior thereto (the date not appearing) the appellants and defendants below, R. S. Rose as principal, and R. L. Pope as surety, executed to him their promissory note for the sum of $500. By his will the decedent appointed his son, the appellee and plaintiff below, Charles Finley, as executor thereof and he qualified as such. There came to his hands as part of the assets of his father's estate the note of defendants which was renewed from time to time, and this action was filed in the Whitley circuit court by plaintiff against defendants to collect the last renewal. They filed separate answers in which they each alleged, in substance, that the consideration of the original note was for an illegal purpose, since the borrowed money, as consideration therefor, was expressly known and understood by all parties to the transaction (both lender and borrower) to be for the purpose of bribing electors to vote for the defendant Rose, who was then a candidate in his circuit court judicial district for the office of commonwealth's attorney, and that pursuant to such agreement and understanding the proceeds of the original note were so expended with the knowledge and consent of H. F. Finley, the payee.

Plaintiff's demurrers filed to those answers were properly overruled, since the facts therein alleged, which were admitted by the demurrer, constituted a perfect defense. See Lockridge v. Clark, 4 Ky. Op. 51; Hale v. Harris, 91 S. W. 660, 28 Ky. Law Rep. 1172, 5 L. R. A. (N. S.) 295; Campbell v. Offutt, 151 Ky. 229, 151 S. W. 403, and many others from this court which could be cited but which we deem unnecessary. Of course, if the lender was unaware of the object and purpose to which the borrower intended to apply the proceeds of the note, a different question would be presented, and which would not defeat his right of recovery as was so expressly held in the cited Hale case.

The order overruling the demurrers was made on May 17, 1932, and as a part of it the case was set for trial at the next September term of the court, and on the 13th day of that month, with leave for plaintiff to file replies by that time, and which was September 24. On September 28, which was the ninth day of that term, the record recites: "Came the defendant, R. S. Rose, and filed his amended answer, set-off, and counterclaim

herein, and the same is now noted of record." The first paragraph of that pleading restated in different phraseology the defence contained in the pleader's original answer, and in which he expressly averred that the note sued on, for the reasons stated, was void, and for the first time he prayed "that said note be cancelled, set aside and held for naught."

In a second paragraph of that pleading defendant attempted to rely on what he styled a counterclaim, and set-off, the substance of which is not only unique, but is also as wide a departure from the established rules of pleading and practice, as well as substantive law, as has ever come before our observation. Between the time of filing the original answer and that of filing the amendment thereto, which was captioned as "Amended Answer, Counterclaim and Set-Off," plaintiff had filed on the same note against the same parties an action in the Rockcastle circuit court where the defendant, Pope, was served, and a summons thereon was issued to the sheriff of Whitley county for the defendant Rose, and which the sheriff of the latter county served on him on the morning of the day when the amendment was filed. The copy was handed to the defendant, Rose, while he was on the bench, and during motion hour (he then and now being circuit judge of his district); but it nowhere appears that any one heard what transpired between the sheriff who served it and the defendant. It was quietly done and without any ostentation; but defendant, Rose, seems to have become greatly incensed because of being so served under such circumstances, which he averred greatly humiliated and disgraced him in the eyes of the multitude gathered in the courtroom, but none of whom either knew, or were made aware of, what occurred so far as the record discloses.

At the expense of some space we have concluded, for the purposes of elucidation, to insert the material parts of that counterclaim, and which are: "Defendant, R. S. Rose, for further answer and counterclaim herein states that since the filing of the suit and defendant's original answer herein, plaintiff has maliciously and without probable cause filed suit in the Rockcastle circuit court on the identical cause of action alleged herein, did so for the fraudulent purpose of harassing and bedeviling defendant; that defendant was this day served with process in Whitley county; that neither he nor

his co-defendant resides and never did in Rockcastle county wherein this suit is filed in the circuit court thereof; that said Pope resides in Knoxville, Tennessee, and has so resided for several years, was attending Rockcastle circuit court as an attorney-at-law; that said plaintiff, as defendant is informed, believes, and charges, caught said Pope there fraudulently and in bad faith for the purpose of summons there in order to get service of summons there, and did so to take the trial of this case out of the Whitley circuit court where it now pends, and out of Whitley county where this defendant and said Finley now resides and have so resided all their lives; that said Finley and his local attorney in this case caused the sheriff, Mart West, to serve the process this day at motion hour on defendant, R. S. Rose, who is the regular judge of the Whitley circuit court, just after motion hour when he was on the bench doing the business of the court in open court in the presence of a very large crowd of a packed courthouse, and at the particular opportune time when defendant Rose had three or four men before him brought out from the jail to try or fix a day for trial for both felonies and misdemeanors. He has reason to believe and does believe and charges that said service of summons was so done to humiliate and disgrace and belittle this defendant, was done maliciously, tortiously; that said summons is against this defendant alone; that this plaintiff and his attorneys knew and intentionally caused said sheriff to lay said summons with the warrants for defendants in felony and misdemeanor warrants, and say to defendant in open court in substance in the presence of the bar and a large courthouse crowd, 'There is the one I am serving on you.' He says the attorney, present when said service was done, for plaintiff, made the sheriff's return to the Rockcastle circuit court without letting defendant know what said return shows. He says said process and service is void and in bad faith, and is an abuse of process and done maliciously and to humiliate and disgrace defendant. He says plaintiff caused the sheriff West to serve said process at the time and place and in the manner set out herein. He says plaintiff is the present Congressman; defendant the circuit judge; that said action in the Rockcastle circuit court is without any probable cause and is malicious; that the service of process of the

bench was likewise so; that defendant is now and has been for several years past a very sick man; that plaintiff and his counsel well knew said fact and took advantage of said fact. He says the High Sheriff served said process in the open court when defendant was calling said criminal cases and reading the warrants and requiring bonds and in the presence of an unusually large, curious crowd; that owing to the prominence of Congressman Finley and this defendant and his sick and weak condition, and the manner, time, and place of said service, it was calculated to and did cause comment and publicity and injury to plaintiff; that the sheriff himself was not and had not been waiting on the court, but his deputies Raines and Tolliver had and were then. He says said suit in the Rockcastle circuit court and especially the process and its service is not maintainable there, is done by plaintiff to take a political advantage of defendant; that Rockcastle county is not adjoining county, and Laurel county is between Whitley and Rockcastle. He says it did humiliate him and insult him, and was wanton, malicious, and high handed; was probably contempt of court as well as an affront to him on the bench and in open court in the presence and hearing of a large crowd, the jury, and attorneys. He says he was and is entitled to privacy and to be let alone, and not taken advantage of that way; that he is damaged in his sensibility and feelings and reputation thereby in the sum of ten thousand dollars ($10,000.00)."

Damages were laid on account thereof in the sum of $10,000, for which amount judgment was prayed against plaintiff personally. No response was filed to that pleading, and on the twenty-ninth day of the term (October 21st) plaintiff entered motion to dismiss the action without prejudice to a future one. Three days thereafter that motion was sustained and the action was dismissed, but the order recites this: "After the plaintiff had moved the court to dismiss this action without prejudice, thereupon, the defendant, R. S. Rose, moved the court to enter an order of record filing his amended answer, set-off and counterclaim herein, which pleading now appears among the papers in this case, and the court having considered the said motion of the defendant, Rose, to file the said amended answer, set-off and counterclaim and being sufficiently advised in

relation thereto, overrules said motion, to which action. and ruling of the court the defendants, R. S. Rose, and R. L. Pope, except, and pray an appeal to the Court of Appeals, which is granted.''

It will be observed that the order states that the ''pleading now appears among the papers in this case,'' and but for which it would flatly contradict the prior order of record, stating that the amendment, with its. alleged counterclaim and set-off features, was ''filed and noted of record.'' Under the circumstances the least effect that may be given to the two orders is that on the date of the first one the pleading was tendered and lodged and thereby became ''among the papers in this case,'' and we will dispose of the appeal upon that. hypothesis.

The. inserted excerpt from the paragraph of the alleged counterclaim and set-off has already been designated as a most unique document; but without further comment we deem it only nceessary to say that it was. and is ineffectual to entitle defendant to any recovery thereon upon a multiplicity of grounds, only some of which will be mentioned. The matters therein contained, even if otherwise meritorious, constitute simply a tort, occurring long subsequent to the original transaction, when the debt sued on was contracted, and is in no sense a counterclaim which, under all authorities, must grow out of, or in some manner be related to, the cause of action sued on. It is unavailable as a set-off,. first, because it sounds in tort and there is no averment of insolvency or nonresidence of plaintiff, and, secondly, because it sought a personal judgment against the executor who committed, or procured to be committed (as alleged), the depredations relied on, and such a personal claim cannot be employed as a set-off to the one asserted by plaintiff in his representative capacity. But, waiving any such rules of practice or procedure, the substance of defendants' alleged counterclaim, or set-off, is about as far separated from a legal cause of action as is one pole of the globe from the other. The day has not yet arrived in this country when a judge of a court is immune from service of civil process, even while he is on the bench presiding over his court. Under numerous opinions from this and other courts, two actions may be filed in different jurisdictions upon the same cause, but which one of them shall surrender to.

the other is a matter to be determined by subsequent procedure and practice.

Both actions in this case by plaintiff, i. e., the one in Whitley and the one in Rockcastle county, were transitory, and the venue could be laid wheresoever one of the joint defendants could be found and served; in which case it is perfectly competent for process to be issued to the county where the other joint defendant, or defendants, may be found and served. Further discussion is plainly unnecessary, since a beginning student of the law will readily concede that no cause of action is contained in defendants' alleged counterclaim as averred in the paragraph from which we have quoted.

However, at the close of the first paragraph containing an answer to the merits, and in the final prayer of the amendment, defendant asked that the note be cancelled because of its being illegal and void for the reasons alleged; and if that specific prayer is sufficient to entitle defendant to relief enforceable by counterclaim, and if the pleading containing it became a part of the record in such a manner as entitled defendant to insist upon its final disposal before plaintiff moved to dismiss the cause without prejudice, then the court erred in rejecting that much of defendants' counter relief upon which he was entitled to a hearing. The rule is well settled that plaintiff may dismiss his action without prejudice at any time "before the final submission of the case to the jury, or to the court." Subsection 1 of section 371 of the Civil Code of Practice. But that may not be done to the prejudice of any meritorious counter relief that the defendant has properly relied on, and appropriately presented. Glenny Glass Co. v. Taylor, 99 Ky. 24, 34 S. W. 711, 17 Ky. Law Rep. 1331; Ringo v. New Farmers' Bank's Trustee, 101 Ky. 91, 39 S. W. 701, 19 Ky. Law Rep. 91; Sparr v. Fulton National Bank, 179 Ky. 755, 201 S. W. 310; and Wagner v. Swoope, 246 Ky. 19, 54 S. W. (2d) 395. Other cases to the same effect will be found cited in those opinions. Those cases also announce the rule that defendants' right to a trial on his counter pleading, notwithstanding the dismissal of the action by plaintiff, is preserved if the pleading containing the counterclaim, or for counter relief, has been *tendered* by the one insisting upon it, and of course that would be true if the pleading had been actually filed. In this case, as we have already

stated, we interpret the orders of the court to disclose that the defendant Rose at least *tendered* his pleading asking for his counter relief some days before plaintiff made his motion to dismiss the action without prejudice, and under the rule so announced in the cases supra (and all others from this court), the dismissal of plaintiff's action should have been without prejudice to the right of defendant to a trial of any of the meritorious counter relief that he sought to assert in his pleading, which was only a cancellation of the note.

The facts in the Sparr Case are very similar to those appearing in this one, and it was therein held that the relief of cancellation of the instrument sued on may be asserted in an answer by way of counter relief and the cancellation obtained if supported by proper pleading and proof. In this case defendant properly pleaded facts entitling him to a cancellation of the note sued on, and upon which he was entitled to a hearing in the court in which he asked for such relief and which, if granted, would forever destroy the note so that no action could be maintained on it thereafter by plaintiff, or by any other to whom it might be later assigned.

The rejection of the particular counter relief referred to, in the manner and at the time that it was done by the court, was therefore erroneous, and for that reason alone the judgment by which defendant was deprived of the particular right discussed is reversed, with directions to set it aside and for proceedings consistent with this opinion.