## Rose et al. v. McKeehan et al.

(Decided May 8, 1936.)

POPE & UPTON, R. S. ROSE, and B. B. SNYDER for appellants.

H. H. OWENS and GOLDEN, LAY & GOLDEN for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

From a $565 judgment recovered against them, R. S. Rose, his wife, and his son-in-law, C. B. Upton, have appealed, and complain of the rendition of this judgment, and Mr. Upton complains of the dismissal of a counterclaim he had asserted against W. R. Lay.

This action was begun by the trustees of the National Bank of John A. Black to recover upon a note executed to that bank, to which an unsuccessful defense was made, and Mr. Upton sought by counterclaim to impose the payment of this note on Mr. Lay. The nature of these pleas is such as to require an account of them.

### History.

In the year 1917, the appellant R. S. Rose was seeking the Republican nomination for circuit judge of the Thirty-fourth judicial district. A rival candidate was vigorously opposing him and the campaign was a heated one.

Some one, whose name none of the witnesses could give, is alleged to have used or loaned to others for use in that campaign $2,000.

After the campaign was over, this man, whom no one knows, wanted his money and $2,000 was borrowed from the National Bank of John A. Black and used to pay him, and this judgment is for the balance due on that debt. Judge Rose says of this debt:

"I never obtained the money at all. I was in the election at the time and I take it I signed the note but I do not know where nor exactly when. * * * After they reported to me that the note had been executed for the purpose of securing my election and to be used in that campaign to influence voters, the question came up to me as to whether or not it was more honorable to let my friends pay it or pay it myself or to repudiate the note, although I knew it was violation of public policy, the expenditure of the money, and I was caught in that predicament, between those two fires and that's the reason, in the first place I knew it was an illegal transaction. I didn't want to know anything about it. I didn't make any inquiry, but as I say, I was put between those two propositions, that either my friends, legal or illegal, who had secured that money and had been spent in my behalf in the campaign, to either let them pay it or pay it myself or my wife pay it, and I didn't inquire much into it, to tell the truth about it, because I didn't know what to do under those conditions. I never told my wife not to pay it nor I didn't tell my friends to pay or not to pay it. * * * I do not know who the sureties were on any of these notes, on the original note or renewals. * * * My recollection is that I executed that note with these other friends to the Bank directly for the money. There might have been an individual in it, I don't know. * * * I signed the note after the money was gotten and spent."

The testimony of other witnesses is equally indefinite as to who furnished this money in the first place and for what it was used.

Mr. Upton in his counterclaim says that he was induced to sign this note by the appellee W. R. Lay,

who assured him that if he (Upton) would sign this note he (Lay) would see the note paid off and Upton saved from loss thereon; that Lay did cause divers payments to be made thereon so that the debt was thereby reduced to its present size. To this Lay pleaded that this promise was not in writing and hence unenforceable.

### Our Conclusion.

The evidence here does not bring this matter within the ruling in the case of Rose v. Finley's Ex'r, 250 Ky. 769, 63 S. W. (2d) 948 upon which appellants rely, as that evidence was much more direct and explicit. As to the counterclaim, the fact that Mr. Lay's promise was not in writing is a complete defense.

The trial court did not err in directing a verdict for plaintiffs upon the note, and against defendants upon the counterclaim.

Judgment affirmed.