CASE 88—ACTION BY SAM. C. HARDIN, &C. AGAINST W. R. CRESS AND
OTHERS TO CONTEST AN ELECTION—JUNE 13.

# Hardin and Others v. Cress and Others.

APPEAL FROM WAYNE CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. AFFIRMED.

ELECTIONS—DESTRUCTION OF BALLOTS BY MISTAKE OF OFFICERS.

Held: A mere mistake of precinct election officers in destroying
the ballots after they have been counted and certified, is not
sufficient to authorize the vote of the precinct to be thrown out,
the truth of the certificate of the officers not being questioned.

W. A. MORROW AND O. H. & R. B. WADDLE, ATTORNEYS FOR AP-
PELLANTS.

Appellants and appellees were respective candidates for var-
ious county offices at the election held in Wayne county in No-
vember, 1901. On the face of the returns the appellees received
a small majority, and were awarded the certificates of election.
The appellants contested the election on ground that in Mill
Springs precinct the officers of the election instead of preserv-
ing the ballots, as required by law, destroyed them, and they
contended that on account of this infraction of the law the
entire vote of said precinct should be thrown out and not
counted; and it is conceded that if this is done that appellants
received a majority of the votes cast and are entitled to the
offices. There is no controversy about the fact that the ballots
were destroyed, but the appellees in an answer allege the good
faith of the election officers, and also that the destruction of
the ballots was the result merely of an oversight. A demur-
rer was filed to the petition and a motion made to strike all
the affirmative matter from the answer; a reply was filed sub-
stantially traversing the averments of the answer. Proof was
taken and exceptions filed to the entire depositions, and with-
out disposing of any of these preliminary motions the case
was submitted as a whole and a judgment rendered for appel-
lees. We take it that as before stated, the only question in-
volved is whether the section of the statute requiring these
ballots to be preserved is directory or mandatory.

The statute is mandatory.

Upon the general principles of law as laid down by the

Hardin and Others v. Cress and Others.

elementary authorities upon the subject of statutory construction the statute in question must be held to be mandatory.

Taking these authorities elementary and the reported decisions in connection with the history of the law itself, it seems to us that it is fully established.

1. That this statute is mandatory by its terms, by its connection with the statute heretofore held to be mandatory, by being remedial in its nature and by making a radical change in a previously existing law.

2. That it makes the contest by a recount of the ballots an integral part of the election duties, and that its provisions in that respect can not be violated without avoiding the entire election as to that precinct.

The experience of a century shows the futility of liberal construction.

We ask for a strict construction to give effect to every part of the law.

If error is made let it be in upholding not tearing down the law.

## AUTHORITIES CITED.

Kentucky Statutes, sec. 1482; Governor's Call for Special Session, 1900; Acts 1900, sec. 20, compiled; Sedgwick on Construction of Statutory and Constitutional Law, p. 325; Ibid., p. 327; Cooley's Constitutional Limitations, p. 91, note 1; 61 Maine, 566; 20 Ark., 609 and 65 Ala., 142; Sutherland on Statutory Construction, p. 574; Paine on the Law of Elections, sec. 786; Reynolds v. the State, 61 Ind., 392; Hudson v. Solomon, 19 Kansas, 177; Struss v. Johnson, 100 Ky., p. 319; Nall v. Tinsley, 21 Ky. Law Rep., p. 1167; Sutherland on Statutory Construction, sec. 454; 6 A. & E. Ency. of Law, p. 325; Paine on the Law of Elections, sec. 497; Ibid.; Terre v. Smith, 29 L. R. A., 673 Cal.; Russell v. McDowell, 83 Cal.; Knowles v. Yates, 31 Cal., 83; Bald v. Smith, 16 L. R. A., Mo., 763; State of N. Carolina v. Taylor, 12 L. R. A., 202; Paine on Law of Elections, p. 3.

HARRISON & HARRISON, ATTORNEYS FOR APPELLEES.

## STATEMENT,

At the election for county and district officers and members of the General Assembly held in Wayne county, Kentucky, on the 5th day of November, 1901, the appellant, Sam. C. Hardin, was the nominee of the Republican party for the office of county judge, and the appellee, W. R. Cress, was the nominee of the Democratic party for the same office. The election officers of

the Mill Spring precinct, one of the voting precincts in said county, after properly counting the ballots, making and signing the certificates, and announcing the result publicly in front of the voting place so that all assembled there for that purpose might hear the same, ignorantly and innocently, under the impression that the law requiring the destruction of the voted and undisputed ballots was still in force, burned the ballots instead of preserving them as required by law. In thus destroying the unquestioned ballots they destroyed all the voted ballots, because it happened that there was not a single ballot about the classification or count of which there was any doubt or difference among the officers. In all other respects the election at the precinct in question was entirely regular. No question of this fact is raised in the pleadings. The result as returned by the officers of the said precinct gave the contestant, Hardin, sixty-eight votes, and the contestee, Cress, 232 votes. This return was duly made to the county clerk, and, upon a count of all the precincts of the county, including that of Mill Springs, the election commissioners of the county awarded the certificate of election to the contestee, Cress, the count of the entire county as aforesaid showing that the said Cress had received a majority of seventy of the legal votes cast. Thereupon, Hardin instituted this contest for the purpose of having the election at the Mill Springs precinct declared void and the entire vote thereof thrown out, the elimination of said precinct leaving him a majority of the votes cast in the county. The other contestants instituted contests for the same purpose and on the same grounds.

Our contention is:

1. The statutory provision involved while mandatory to a certain extent, and for certain purposes, is not mandatory in so absolute a sense as to render an election void in which it is violated. A statutory provision may be mandatory for one or more of four certain purposes or ends, viz.:

(a) It may be mandatory as to the election officers, and a violation thereof may subject them to punishment, and yet the election not be rendered void by such violation. Sec. 138, of the present election law, is an example of this kind.

(b) A provision may be mandatory as to the voter and a violation thereof may result in the loss of his vote, and still the precinct not thrown out.

(c) A provision may be mandatory, as it regards the preservation of the ballots for use as evidence in the event of judicial or other investigation, as in the case of questioned or disputed ballots.

Hardin and Others v. Cress and Others.

(d) There is a class of provisions, however, that a failure to comply with may render the election void, as in cases of flagrant violations as to secresy, or force, or fraud, when the violation goes to the substance and merit of the election itself, and make it impossible to determine really the will of the people.

2. The statutory provision in question is mandatory only so far, and for such purposes, as its mandatory property is sustained by reasons that are positive and in harmony with the spirit of our institutions.

3. The petitions in these cases are fatally defective, in that they do not aver that contestants received, and contestees did not receive, a majority of the votes cast.

4. While better elections might result from a strict conformity to every detail of the election law, disastrous, almost chaotic conditions, would, for many years follow a decision of the court making such conformity absolutely necessary.

5. The spirit of our institutions, and the welfare, if not the perpetuity of our government, forbid that the will of the people be set aside on the ground of non-action or misaction of the election officers, when that *will* has been legally expressed and clearly ascertained.

6. The construction of the statute for which we contend, is one that would not impeach its constitutionality; is in harmony with the spirit of our institutions; is in line with the decisions of the courts in this and other States and the teachings of the recognized text books; gives the statute a useful and reasonable function to perform in the election machinery of the State; aids, rather than defeats the great object of a free and untrammeled suffrage, and leaves in operation and force the *will* of the majority of the people.

## AUTHORITIES CITED.

Sec. 20, article 3, of Present Kentucky Election Law (Act Extra Session, 1900, approved Feb. 15); McCreary on Elections (3d ed.) sec. 13, (Id., 4th ed., 48); McCreary on Elections (3d ed.) sec. 24; Page v. Allen, 58 P. St., 347; Struss v. Johnson, 100 Ky., 319; sec. 138, art. 13, Present Ky. Elec. Law; Major v. Barker, 99 Ky.. 307; Nall, &c. v. Tinsley, &c., 21 Ky., 1167; California Statutes, 1863, p. 354, sec. 35; People v. Holden, 28 Cal., 123; Commonwealth v. Barry, 33 S. W., 400; People v. Burden, 45 Cal., 241; Burnside v. Lincoln County Court, 86 Ky., 423; Skerritts Case, in Brightly's Leading Cases on Elec-p. 321; Boileau's Case, Id., 268; Paine's Law on Elections, secs.

498, 502, 503; Cooley's Constitutional Limitations (5th ed.) pp. 776, 777 and 778, under Conduct. of Elec.; McCreary on Elec. (4th ed.) secs. 126, 225, 226, 228, 511, 524, 504, 506.

OPINION OF THE COURT BY JUDGE WHITE—AFFIRMING.

These are contests of election over the county officers in Wayne county, arising out of the election held in November, 1901. The appellant Sam C. Hardin was a candidate for the office of county judge, and, the certificate of election having been awarded to appellee, W. R. Cress, his opponent, an action was filed to contest the election because of alleged irregularities and illegalities in Mill Spring precinct in Wayne county. The charge in the petition is that Mill Spring precinct, according to the certified returns of the election officers of that precinct, cast 232 votes for appellee, Cress, and sixty-eight votes for appellant; and, as the vote of the entire county gave Cress a majority of seventy, it is charged that appellant was entitled to the certificate of election and to the office. It is alleged that the votes of Mill Spring precinct should not be counted at all, because the election officers at that precinct, after the votes had been duly counted and certified, failed to preserve the ballots voted by the voter, but in fact destroyed the ballots, and made no returns thereof except the certificate of the officers as to the number of votes cast and counted for each candidate. There is no charge that there were any illegal ballots counted or cast, nor that any legal ballots were not counted, nor is there an allegation that the certificate of the election was an incorrect statement of the ballots voted. In fact, there is no allegation of fraud, mistake, or illegality in any particular save that the ballots voted were destroyed after they had been counted and certified, and the result announced publicly. The petitions in all the cases set out the same ground of con-

test, the exact figures not being the same, but all depending on whether the vote of Mill Spring precinct shall be counted. If that precinct is included, appellees are all elected, and, if excluded, appellants are all elected. The answer of appellees pleaded the regularity of the election, and pleaded that at Mill Spring precinct the officers of election were divided politically, a judge and sheriff being Republicans, and a judge and clerk being Democrats, with each party having an inspector; that, after the polls had closed, the ballots were all counted, there being no contested ballots, and the certificates written and signed by all the officers, and the result of the count announced; and that by a mistake or in ignorance of the law the election officers burned the ballots that had been counted, and so it was impossible to make proper returns as the law requires. Appellees say that all this occurred by reason of a mistake of the election officers as to the law, and that it was not intended to, and did not in fact, deprive appellants of a single vote to which they were entitled, nor did it give to appellees a single vote to which they were not entitled, nor was any person injured in any way by the destruction of the ballots. The proof of the facts, as testified by each and all the election officers and by the party inspectors, shows that at Mill Spring precinct, appellees received the full number of unquestioned votes, and appellants only the number of votes as shown by the certificate of the election officers; that there were no questioned or uncounted ballots; and that the voted and counted ballots were burned and destroyed under the mistaken belief that the law so required. They discovered that the law required the ballots to be kept, strung, and returned, but when this was done it was too late; the ballots had been destroyed. Upon these facts the trial court dismissed the

cases, it having been agreed that all might be heard together and heard on the depositions taken in one case. To reverse those judgments of dismissal these appeals are prosecuted.

The pleadings and proof taken herein nowhere charge or show that by the destruction of the ballots any person was deprived of a single vote to which he was entitled, or that any vote was counted for any person to which he was not entitled. There is no error or fraud charged or proven in the result of Mill Spring precinct by which the result was changed in a single instance in favor of the one or other candidate. Indeed, so far as the petitions aver, and when taken most strongly against the pleading, the votes certified by the election officers are exactly the votes cast by the qualified voters in the precincts for the various candidates. The question, then, is presented, are these voters who have legally voted and were legally qualified to vote to be deprived of their votes because of the action of the election officers in destroying the evidence of how these votes were cast after they had been correctly counted and certified? To answer this question intelligently, it must be remembered that these ballots, after being strung, are sealed up, and returned with the certificate, and are not to be opened by the officers who canvass the election returns for the county, but are to be opened and used as evidence in case there is a contest over that precinct or its result. The certificate of the election officers is to be used to ascertain how the votes of any precinct were cast, and in case of an attack on the certificate in a contest the ballots may be used as evidence to test the verity of the certificate, but for no other purpose. Here there is no attack on the certificate from Mill Spring precinct. It is admitted, by the pleadings not making an at-

tack thereon, that it is true. The proof of all the election officers and inspectors shows it is true. So that the ballots destroyed could not in this case be used as evidence at all, if here, because the returns from that precinct are not questioned so far as the truth of the certificate is concerned. The contention is that the provisions for preserving the ballots is mandatory, and their destruction would of itself destroy the election held in that precinct, and as to that election disfranchise all the voters therein. If such be the law, the same result must follow whether the destruction be by mistake of the law or by accident or evil design. Mr. McCrary, in his work on Elections (page 522, section 724) says: "The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of the election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the elector are in the interest of pure elections, and should be complied with at least in substance; but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by the election officers of the duties imposed upon them can be reasonably well secured by providing a penalty for failure to do so." This principle, said to be the weight of authority, meets our approval, and these cases are apt illustrations of the reasonableness of the rule. If the destruction of these ballots under a mistake of the law by the election officers

would destroy the vote of that precinct, so might any other failure to perform any act required of the election officers,—as, for instance, to send the returns by some person other than designated by law to the county clerk's office, or by leaving them in that office in charge of some person not an officer, and such like. All these various requirements of the officers of election should be complied with by them, and an evasion or disregard thereof should be visited with the penalties laid down by the law. These were all provided for the safety and security of the will of the voter freely and fairly expressed. The object of the system of voting is that the voter may freely cast his ballot as he desires, and that it may be honestly and correctly counted as cast. To permit a slight failure by the election officer to perform some duty imposed upon him to deprive the voter of his vote and the candidate from receiving the benefit of such vote, would be to destroy the substance of the whole law. We do not mean to say that a fraudulent destruction of the ballots might not be a ground of contest. But to be a fraudulent destruction there must of necessity be a false certification of the count, or a failure to count ballots that had been cast. The fact that ballots had been destroyed would not and should not be permitted to affect the result of the election when the ballots had all been counted as cast by the legal qualified voter, and correctly certified by the election officers. It is only the last act that provides for the preservation of the ballots. The ballots are important for the sole purpose of ascertaining how the voter voted. When it is conceded that the certificate of the election officers correctly shows how the votes were cast, the original ballots cease to be important. As proof of this fact, the law provides for their destruction after a certain time in case there

is no contest. In these cases it is conceded, but, if not conceded, it is clearly shown, that appellees received a clear plurality of the votes cast, and were elected to their respective offices, and were therefore entitled to the certificates of election and the judgments in these proceedings. We apprehend that no court would hold that a mere mistake of the election officers in destroying the ballots after they had been correctly counted and certified would nullify and destroy an election at any precinct, and disfranchise the voters therein that in all other respects appears to have been conducted according to law. The trial court declined to declare the election void in that precinct for any such reason, and in this opinion and judgment there seems to us no error.

　　Judgment affirmed.

　　Whole court sitting.