CASE 76.—ELECTION CONTEST BETWEEN JOHN  J.  PACE AND ROBERT REED.—June 1, 1910.

## Pace v. Reed.

Appeal from Magoffin Circuit Court.

D. W. GARDNER, Circuit Judge.

Judgment for Reed, Pace appeals.—Affirmed.

1.  Elections—Effect of Mistake by Officers—Failure to Preserve Ballots.—The vote of an election precinct will not be thrown out and the result of the election  changed merely  because the election officers by mistake failed to preserve the ballots after they were counted and certified.

2.  Elections—Party .Challengers—Assistance    of    Voters   in Booths.—Though party challengers intended no wrong, and only intended to accommodate voters, when at their instance they assisted them in the booths to find the names of candidates, it was error for them to do so, and votes in such cases should not have been counted.

3   Elections—Place of Holding—Effect of Irregularity.—The vote of an election precinct will not be thrown out and the result of the election changed because the polling place was an old log house in which there were  sundry  openings  through which outsiders could peer in, but could not see how ballots were marked, and because the booths had no curtains over the entrance, where the house was the only place furnished for holding the election, which was quiet and peaceable, and was held as nearly in conformity to law as the circumstances and facilities would permit.

4. Elections—Certificate of Nomination—Validity.—A certificate of nomination in legal form, except that the chairman and secretary of the convention signed it as chairman and secretary of the county committee, is not invalid.

5. Elections—Contest—Evidence—Tampering with Ballots.—Evidence held insufficient to show that the ballots had not been tampered with since the election, but, on the contrary, to show that persons had opportunities to tamper with them and made efforts to do so.

6. Elections—Contest—. Petition— Opening Ballot Boxes.—A charge in the petition, in substance that a recount of ballots would show that the contestant was elected, did not state any fact authorizing the court to open the ballot boxes.

7. Judges—Disqualification to Act—Waiver of Objection.—Where, in an election contest, before the contestant filed his affidavit objecting to the judge he permitted the court to pass on a demurrer to his petition, and the contestee to file a motion to strike certain parts therefrom, and the contestee filed his answer and counter contest, the contestant waived his right to require the judge to vacate the bench by reason of incapacity to preside.

J. F. BAILEY and J. H. SUBLETT for appellant.

FINLEY E. FOGG, J. H. GARDNER and BYRD & HOWARD for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The parties to this appeal were opposing candidates for the office of sheriff in Magoffin county at the November election, 1909. The result of the election, as certified by the election officers and the county board of election commissioners, was favorable to appellee, his majority being 146, and the certificate of election was issued to him. Appellant filed a petition in equity in the circuit court contesting appellee's right to the certificate. He set forth many alleged reasons why the certificate was improperly issued to appellee, and alleged that he was entitled to the of-

fice. The reasons alleged were, in substance, as follows: First, appellee procured his election by bribery of voters, with whisky and money. Second, that something near 200 votes received by appellee in the county were cast by persons who voted openly and in the presence of the election officers without having declared on oath their inability to mark their ballots unassisted by the officers. Third, that nearly 40 persons whose ballots were cast and counted for appellee were under the age of 21 years. Fourth, appellee received the votes of 30 persons who were not residents of the precincts in which they voted. Fifth, that the votes cast in the Bloomington precinct, No. 5, were improperly counted, as the officers of the election in that precinct were not sworn, and the election was not held according to law because the voters were permitted to approach and remain within 50 feet of the polls while the voting was in progress, and intimidated the voters friendly to appellant, and because the election officers failed to preserve, but destroyed, the ballots after counting and making a certificate of the votes cast. Sixth, that the votes cast in Trace Fork precinct, No. 9, should have been excluded from the count because the votes received in that precinct were cast openly in the presence of the election officers without the voters having declared upon oath that they were physically or otherwise unable to mark their ballots in secret, and because persons, other than the officers, were permitted to approach and remain within 50 feet of the polls during the progress of the voting, and that such persons saw how the voters marked their ballots and also intimidated and influenced the voters in voting for the contestee. Appellant alleged that, after deducting the illegal votes referred to and the whole vote of the

two precincts named, he was elected by more than 150 majority. He also alleged that appellee was not entitled to have his name printed upon the ballots used at the election, because he had not been nominated as required by the statute. He further contends that he is entitled to a reversal because the lower court failed and refused to vacate the bench after affidavits had been filed showing reasons why he should not preside. A demurrer was filed to the petition, but was overruled. Appellee filed an answer denying each and every affirmative allegation contained in the petition, and for counter contest charged that there were something over 200 illegal votes cast at the election for appellant consisting of persons who voted openly and in the presence of the election officers without having declared upon oath their inability to mark their ballots in secret, and of persons under 21 years of age, and of persons who were not residents of the precincts where they voted, and of persons influenced and bribed by appellant and his friends in pursuance to a conspiracy and by the use of money and other things of value. These affirmative allegations by the contestee were controverted by reply. The testimony was taken by deposition. The trial resulted in the dismissal of appellant's petition and a judgment against him for the cost.

Counsel for appellant concede that he failed to sustain his contest upon the alleged reasons contained in the first, second, third, and fourth grounds of contest; and that, while it was shown by the testimony that some illegal votes were cast for appellee, the testimony shows that an equal number of like votes were cast for appellant. Appellant relies mainly upon the alleged illegal vote of the Trace Fork and Blooming-

ton precincts.  He claims that the votes cast for appellee at these precincts were illegal and should be deducted from appellee's total vote, the result of which would elect appellant.  We will not spend much time discussing the alleged illegalities in the conduct of the election in the Bloomington precinct, as appellee's majority in that precinct was only 59, and would not change the result of the election if deducted from appellee's total number of votes.  The election in that precinct was held in a schoolhouse about 20 by 28 feet, built of logs, weatherboarded, and ceiled overhead.  There were no ropes or other obstructions placed around the building to keep the voters from coming within 50 feet of the polls, and consequently the voters, during the day, came up to the building. We will refer to this error again when we come to the Trace Fork precinct.  It was also shown that, after the ballots were counted and certified in the Bloomington precinct, the election officers destroyed the ballots by burning them.  It is clear that this was done by mistake; that the election officers acted honestly in the matter and with no intention to aid or injure any candidate.  The election in that precinct was quiet and peaceable, and everybody who desired voted.  The destruction of the ballots did not change the result of the election, and the legal voters in that precinct should not be deprived of their votes, nor should the candidates be prevented from having the benefit of them, on account of the mistake made by the election officers in their duty to preserve the ballots.  See Hardin v. Crees, 113 Ky. 734, 68 S. W. 1090, 24 Ky. Law Rep. 513.

The election in Trace Fork precinct was held in a log house which had been used as a residence, and

was 14 feet and a few inches square.  There was a
chimney in one end and a door in either side of the
house.  There were two chinks in the walls about 30
inches long and 2 1-2 inches wide.  It seems that the
election officers sat at a table in front of the fireplace;
that the two booths were in front at their left, one in
the corner and one next to the chimney; that the
booths were made of the proper material and were
of the regulation kind, except there were no screens
or curtains over the entrance.  The entrance to the
booths was in view of the officers.  One of the doors,
which was kept closed during the day, had a hole in
it which was covered with an old coffee sack.  It was
shown by the testimony that several times during the
day persons on the outside pushed this sack aside and
looked into the house, and that they would also look
through the cracks in the walls into the house.  But
it was shown that one on the outside could not tell
how any person voting marked his ballot; nor was
it shown that any of the election officers knew how
any one stamped his ballot, except in about five in-
stances, and then under the following circumstances:
It was shown that the Republican challenger was
called upon in four or five instances by voters in the
booths to find the names of certain candidates for
them, which he did, and the Democratic challenger
was called upon for a like purpose.

The testimony shows that neither of them intended
any wrong; that it was their intention only to ac-
commodate the voters who had called upon them.
Their doing so was error, however, and the votes of
those five persons should not have been counted.
Their names, however, are not given, nor does it ap-
pear for whom they voted.  The officers committed
a misdemeanor for which, possibly, they could have

been punished. It was rather dark in the house during the day, and a lamp was placed in one of the booths, and a hole was made in the roof of the house over the other; but there was not the slightest evidence that any person looked through this hole in the roof. As in the Bloomington precinct, there were no means provided to prevent persons on the outside from coming up close to the building; but there were attempts made to keep them away without success. All the testimony shows that the election in this precinct was quiet and peaceable, and that the conduct of the election officers was admirable, with the exception stated, and the election was held as near in conformity with the law as the circumstances and facilities furnished would permit. The voters in that precinct should not be deprived of their suffrage and the election officers condemned for holding the election at that place when it was the only place furnished them for holding it. There is not the slightest proof showing that appellee or any of his friends had anything to do with furnishing of the house or the booths in which to hold the election, and he should not be made to suffer on account of this error. In the case of Preston v. Price, 85 S. W. 1183, 27 Ky. Law Rep. 588, there were more errors shown to have been committed in the Myrtle precinct referred to in that case than in the Trace Fork precinct in the case at bar, and the court held that the legal voters in that precinct should not lose their votes and the candidates the benefit of them for the errors committed, and refused to throw the votes of that precinct out. Appellee, as well as other county candidates, was nominated by the Democratic county committee. His certificate of nomination was certified to the clerk of the county in legal form, with the exception that the

chairman and secretary signed as chairman and sec-
retary of the committee, instead of as chairman and
secretary of the convention. This slight error did
not invalidate the certificate, however, and, besides,
it was a matter in which appellant had no interest.

Appellant further contends that the court erred to
his prejudice in not opening the ballot boxes and re-
counting the ballots upon his motion. Appellant had
the county court clerk, Mr. Lacy, to carry the ballot
boxes into court during the trial and moved the court
to open them. The boxes were constructed of wood
and seemed to be intact. Appellant proved by the
clerk that he had kept them in the vault of his office;
that the vault had been kept locked since he came into
office, the first Monday in January, 1910; and that no
one had had access to them since he took charge of
the office, so far as he knew. On cross-examination
the clerk, who was sustained by one of his deputies,
stated that several months prior to his induction into
office the lock on the vault door was out of fix and
could not be used; that the door to the clerk's office
was repeatedly left unfastened; that there was a tran-
som over the door large enough for a person to enter.
The jailer testified that he had a key to the clerk's
office which he carried on a ring with several other
keys; that some weeks prior to the trial of the case
the key was in some way taken off the ring, and he
had not seen it since. The clerk also testified that on
Sunday evening before the trial of this case some
friends of a candidate on the ticket with appellee,
who also had a contest, appealed to him to let them
have an oportunity to get into the vault where the
ballots were; that they gave him some whisky to
drink which made him sick and confined him to his
bed until the following Wednesday; that when he first

became sick he placed the keys to the office in the hands of a lady relative. Appellant did not introduce Minix, the county court clerk at the time of the election and up to the first Monday in January, 1910. Therefore there was no evidence contradicting the statement that the lock on the vault was out of use for several months before the present clerk took possession. Therefore appellant failed to introduce proof showing that the ballots had not been tampered with since the election; but, on the other hand, appellee did show that persons had opportunities to tamper with them and made efforts to do so. See the cases of Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 75 S. W. 257, 24 Ky. Law Rep. 1099, 25 Ky. Law Rep. 435, and Baker v. Dinsmore (the opinion in which was delivered May 6, 1910) 127 S. W. 997.

However, appellant did not state any fact in his petition which would authorize the court to open the ballot boxes. The substance of his charge was that a recount of the ballots would show that he was elected instead of appellee. In the Edwards-Logan Case, supra, the allegations were that the canvassing board made grave errors in counting the votes to the plaintiff's loss and disadvantage, and then prayed the court to recount the ballots cast at the election. This court said these grounds were not sufficient to authorize a recount, and continued as follows: "Any other practice would foster and encourage speculative contest, based, not upon known facts or reasons, but made in the hope that something might be discovered. It would be to make this court a canvassing board, and to substitute commissioners appointed by the court for the canvassing board created by law." In McCrary on Elections (Ed. 1887) sec. 400, it is said:

"An application for a recount of the ballots cast at an election will not be granted unless some specific mistake or fraud be pointed out in the particular box to be examined.  Such recount will not be ordered upon a general allegation of errors in the count."

The question as to the failure of the judge to vacate the bench upon the filing of the affidavits by appellant alleging his incapacity to preside is a more serious question. Without entering into the details of the facts contained in the affidavits, it is sufficient to say that, in our opinion, the judge should have declined to preside.  But we are also of the opinion that appellant waived his right to require the judge to vacate the bench for the following reasons: He suffered and permitted the court to pass upon a demurrer to his petition on the 2d day of December, 1909, and appellee to file a written motion to strike from his petition certain parts, to which he objected, and on the 3d day of December, 1909, appellee filed his answer and counter contest.  Appellant filed his affidavit objecting to the judge trying the case on December 4, 1909.  In the case of Hargis v. Commonwealth, 123 S. W. 239, 135 Ky. 578, this court said: "The rule is that an objection to the trial judge raises in effect a question of jurisdiction, and the objection, to be available, must be made before an appearance to the merits of the action or the submission of preliminary motions by either party preparatory to a trial.  Kentucky Central R. R. Co. v. Kenney, 82 Ky. 154; German Ins. Co. v. Landrum, 88 Ky. 433, 11 S. W. 367, 592, 10 Ky. Law Rep. 1039; Vance v. Field, 89 Ky. 178, 12 S. W. 190, 11 Ky. Law Rep. 388; Russell v. Russell, 12 S. W. 709, 11 Ky. Law Rep. 547; Bales v. Ferrell, 49 S. W. 759, 20 Ky. Law Rep. 1564." Under these

authorities, appellant lost his right to have the judge retire from the bench.

Perceiving no other error prejudicial to the substantial rights of appellant, the judgment is affirmed.