## Weller v. Muenninghoff.

(Decided October 2, 1913).

Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Elections—Primary—Construction of Section 27—Power of Judge to Order Election Officers to Correct Certificate.—Under section

27 of the primary act the judge or court has no power to order the correction of errors or other wrongs unless they relate to some matter in connection with the preparation or printing of the ballots before the election is held, and therefore neither the judge nor the court has power, under this section, to compel officers of election, or election commissioners, to correct or reform election returns, or do or omit to do any other material act in connection with the conduct of the election, or in connection with the returns.

2. Elections—Power of Election Officers at Primary Election to Correct Mistake in Certificate.—When a mistake is made by the election officers in making out their certified result of the votes reived by candidates, they may voluntarily correct this mistake at any time before the election commissioners have finally acted on the returns and delivered a certificate.

3. Elections—Primary—Spoiled Ballots in One Race.—Where a ballot, on which the names of a number of candidates for different offices are printed, is stamped by the voter for two candidates for one office, this spoils the ballot as to that office, but it should be counted for all the other candidates for whom the elector properly voted.

4. Elections—Primary—Return by Officers of Contested, Disputed and Spoiled Ballots.—Section 25 of the primary election law differs from the general election law in respect to the manner in which disputed and spoiled ballots shall be identified by the officers of election, and to authorize the counting of this class of ballots it is only necessary that they should be returned in the manner provided in the primary election act.

5. Elections—Primary—Notice of Contest—Time for Contestee to Answer.—Where the notice specifies the time in which the contestee shall answer, he should answer within that time unless further time is given him by the court, as the court may do.

6. Elections—Notice—Requisites of—Names of Challenged Voters to be Given—Waiver.—A notice should be so specific and direct as to give to the other party reasonable information of the ground on which the contest is based, and when the notice is too indefinite to furnish this information, the court, upon motion of the complaining party, if such motion is made, should require the notice to be made more specific, or else entertain a motion to strike the indefinite parts from the notice. A notice challenging the right of certain votes for the contestee should give the names of the challenged voters, and no others can be considered unless their names are furnished in response to a rule. But if the parties, without raising objection, are willing to try the issue on an indefinite notice, neither of them will be heard, after the case has been submitted for judgment, to raise the question as to the sufficiency of the notice.

7. Elections—Effect of Superintendent of Charitable Institution Influencing Inmates.—The superintendent of a charitable institution should not exert his influence with the inmates to induce them to vote for any particular candidates. But in the absence of a showing that the superintendent exerted any influence other than

to request the inmates to vote for his candidates, the votes cast by the inmates will not be thrown out.

ROBERT L. PAGE, WALLACE McKAY for appellant.

A. J. BIZOT, P. H. SAVAGE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, Weller and the appellee, Muenninghoff, were Democratic candidates for the office of magistrate in the fourth magisterial district of Jefferson County at the primary election held on August 2, 1913. The election returns as made by the election officers showed that Weller had received 498 votes and that Muenninghoff had received 498 votes. But after the ballot boxes and all the paraphernalia of the election had been returned by the election officers to the county clerk, as provided in the primary law, and before the election commissioners had issued a certificate of election or determined in any manner what the result of it was or should be, Muenninghoff filed an affidavit before Judge W. M. Smith, one of the judges of the circuit court for Jefferson County, in which he set out that the officers of election at St. Helens precinct at the close of the polls counted the votes and certified in the manner provided by law that Muenninghoff had received 198 votes and Weller had received 41 votes, when in fact Muenninghoff had received 204 votes and Weller 43 votes. He stated that the mistake made by the election officers in certifying the correct vote arose in this way:

"That the said officers in counting the ballots rejected and failed to count for the affiant, or for any candidate, 19 Democratic ballots; that the said 19 Democratic ballots were placed in an envelope marked "rejected" and that no memorandum was attached to each ballot as provided by law showing whether or not said ballots had been counted. That the said envelope, which contained the said 19 rejected ballots, was returned by the said officers to the county clerk of Jefferson County and is now in the possession of said clerk. Affiant states that six of said 19 rejected ballots were properly voted for him and should have been counted for him. That two of said 19 rejected ballots were properly voted for W. L. Weller, Jr., and should have been counted for him. Affiant states that the said officers of election rejected the said 19 ballots and failed to count them because 19 voters in said pre-

cinct in voting said ballots stamped said ballots opposite the name of two candidates for the same office other than the office of magistrate, and that said ballots should have been rejected only in part.''

He asked the court to order the officers of election to correct the error indicated and reform their certificates so that it would show that Muenninghoff received 204 votes and Weller 43 votes. Accompanying this affidavit was the affidavit of all the election officers, stating that the facts were correctly set out in the affidavit of Muenninghoff.

Upon the filing of these affidavits, Judge Smith entered an order reciting ''that the election officers be and they are hereby ordered and directed to correct and amend the certificates returned by them to the county clerk of the county court of Jefferson County, Kentucky, in the Democratic ballot box used at the St. Helens precinct on the said election day so that the said certicate when corrected will show that the correct number of votes received by the said Muenninghoff and Weller were and are 204 and 43 respectively.''

Thereupon the election officers corrected the certificate in this precinct, and this correction gave to Muenninghoff in the district, which contained other precincts, 504 votes and Weller 500 votes, and in due time the election commissioners issued a certificate of nomination to Muenninghoff. Judge Smith in making this order acted under what he conceived to be the authority conferred by section 27 of the primary election law, which section reads as follows:

''Whenever it shall be made to appear by affidavit filed in the circuit court, that an error or omission has occurred or is about to occur in the placing of any name on an official primary ballot, or that an error or wrong has been committed or is about to be committed in printing such ballot, or in the performance of any duty imposed by this act, the court shall order the officer or person charged with such error, wrong or neglect, forthwith to correct the error, desist from the wrongful act or perform the duty, or show cause why he should not be compelled to do so. Failure to obey the orders of the Judge or Court shall be contempt of court and punishable as such. If the circuit court be not in session in the county, the circuit judge shall hear and determine the complaint in vacation, unless he be absent from the county, in which

case said affidavit shall be filed before the judge of the county court who shall have full power to hear and determine the complaint and make appropriate orders therein. The orders of a court or judge under this section shall be final and not appealable. Only candidates may institute proceedings under this section.''

We think this section can only be invoked when it is made to appear in the manner therein stated that an error or omission or wrong has occurred, or is about to occur, or has been committed, or is about to be committed in respect to some act required to be preformed in connection with the ballots preliminary to the election and that the words ''or in the performance of any duty imposed by this act'' are referable to some duty pertaining to the preparation or printing of the ballots. It was not contemplated that in an ex parte proceedings like this the judge or the court might make an order requiring the election officers to correct or reform their certificate, or do any other act or thing in connection therewith or in reference thereto. To so construe this section as to confer power on the judge or court to compel officers of election or election commissioners to correct or reform election returns or do or omit to do some other material act in connection with the conduct of the election or with the returns, would invest the judge with a measure of authority that we do not think was intended by the act. It will be observed that the section provides that ''any orders of the court or judge under this section shall be final and not appealable,'' and it can readily be seen that a candidate in the ex parte proceeding contemplated by the section, might be given unwittingly and unintentionally by the judge or court an advantage that he was not entitled to and that his adversary affected by it could not assail.

The Legislature in giving to a court or judge, as is done by this section, power to make final and unreviewable orders and enforce obedience to them, created an agency that an unscrupulous candidate might use to advance his own interests and injure his contender at a time when his contender was in total ignorance of what was being done, and we believe that the section should be, and fairly may be so construed as to confine these orders to things that happen before the election having some connection with the preparation and printing of the ballots, and that it was only intended to furnish a summary

method of enforcing obedience to the election laws by officers and others having to do with the election in its introductory stages.   Hager v. Robinson, 154 Ky., 489.

The candidates for magistrate were entitled to have counted for them by the election officers the votes these ballots showed they received, as the act of the voters in voting for two candidates for the same office only spoiled the ballots as to that office, and so the fact that Judge Smith erroneously entered an order requiring the election officers to make the correction indicated does not affect the validity of what they did or deprive Muenninghoff of the votes he was given by the correction, as the election officers had authority independent of this order made by the judge to make at the time they did the correction they made.

In McEuen v. Cary, 123 Ky., 536, it appears from the opinion that in one precinct the election officers by mistake returned a certificate containing an erroneous statement as to the number of votes received by the contestant and the contestee, and that on the day after the election the officers discovered the error and two days afterwards corrected it by changing the certificate they had made to conform to the real facts.   In holding that the officers of election had the right to do this, the court said: "It was the duty of the officers to return a true statement of the vote as shown on the tally sheet, and until this was done they had not performed their whole duty in the premises, and had they refused to make the correction, it is well settled in this state that they could have been compelled to do so by a writ of mandamus."

It is said, however, by counsel for Weller that neither the election officers or the election commissioners or the court had the right to count for Muenninghoff or Weller any votes appearing for either of them on these 19 rejected ballots, because these ballots were not returned by the election officers in the manner provided by law. The general election law in section 1482 of the Kentucky Statutes provides in great detail how rejected ballots or ballots not counted shall be preserved, identified and returned by the election officers, and we held in Edwards v. Logan 114 Ky., 312, and Childress v. Pinson, 30 Ky. L. R., 767, that unless the rejected or uncounted ballots were preserved, identified and returned by the election officers in the specific manner pointed out in the statute that they could not be counted, although they should have been

counted if they had been preserved identified and returned in the proper manner. It may be conceded that if section 1482 of the general election law was applicable that no one of these 19 ballots could be counted for any candidate, because they were not preserved, identified or returned in the manner pointed out in section 1482. They were simply placed in an envelope, which was marked ''rejected'' without being otherwise identified, as required by the general election law. But the primary election law differs materially from the general election law in respect to the manner in which rejected and uncounted ballots shall be preserved, identified and returned by the election officers.

Section 25 of the primary election law provides that ''as soon as the officers of election have thus separated, sorted, and bunched the ballots for each political party, then they shall take the tally sheets provided by the county clerk and shall count all the ballots for each political party separately until the count is completed and shall certify to the number of votes for each candidate for nomination for each office upon the ticket of each party. They shall then place the counted ballots in the ballot box of each respective political party after first fastening and sealing said ballots for each political party in a separate bundle, and sealing them for transmission to the county clerk as is now, or may hereafter be required for the transmission of ballots voted at a regular election. Said election officers shall then place the tally sheet for each political party in separate envelopes provided for that purpose by the county court clerk, and they shall seal said envelopes and place them in the ballot box of such party. They shall then place all contested, disputed and spoiled ballots in envelopes prepared for that purpose and seal the same and place same in the ballot boxes. Then after the officers of election have thus counted, certified and prepared the election returns in the ballot box of each respective political party, together with all the supplies that are to be used in connection with said election, such as stencils, ink pads, sealing wax, stamps, seals, and other supplies that are, or may be required to be returned to the county court clerk, and lock said ballot boxes　＊　＊　＊.''

It will be observed that by this section all that the election officers are required to do with respect to contested, disputed or spoiled ballots is to place them in an

envelope, seal the same and place it in the ballot box, and this the election officers did, thus complying with the very letter of the primary act. We therefore conclude that on the face of the returns as corrected the election commissioners correctly found that Muenninghoff had received 504 votes and Weller 500 votes and properly gave the certificate to Muenninghoff.

Turning now to the notice of contest, we find that on August 12th, and within the five days allowed by the statute, Weller had executed upon Muenninghoff a notice informing him that he would contest his right to the certificate upon the ground that the officers of election in St. Helens precinct, in which was located a public institution known as a Home for the Aged and Infirm of the City of Louisville, illegally and wrongfully permitted certain named inmates of this institution to vote at the election for the various candidates, including Muenninghoff, and also illegally permitted a large number of the inmates "whose names were unknown to Weller" to vote at the election for Muenninghoff, and that J. K. Westfall, superintendent of the institution, brought the inmates who voted to the voting place, and that a large number of them, who were so old, infirm and feeble-minded as not to understand or appreciate what they were doing, were directed to and did vote for Muenninghoff in obedience to the request and direction of Westfall, who had complete control over them.

It was also charged that the voting of the inmates of this institution for Muenninghoff was the result of an illegal conspiracy entered into between the election officers, Westfall and Muenninghoff for the purpose of defeating Weller; and further charged that the election officers unlawfully permitted a certain number of named voters at this precinct, and "20 others whose names were not known to Weller" to show and exhibit openly their ballots to Westfall and the officers of election and others, after the ballots had been stamped and marked, so as to show that the voters had voted for Muenninghoff.

The notice further assailed the action of the election officers in changing the certificate of the election returns in obedience to the order of the court heretofore referred to. In and by this notice Muenninghoff was warned to answer and defend the contest on the fifth day after the service of the notice upon him. As the notice was executed on August 12th, the answer of Muenninghoff was

due on August 16th. On August 15th Muenninghoff came into court before the judge to whom the contest papers had been assigned, and filed written motions asking that the notice be paragraphed, that certain parts of it be stricken out, and that a demurrer to the third paragraph be sustained.

When these motions were filed in court, the judge made and entered the following order: "The contestee in this action having this day filed a motion to strike, and a demurrer to the third paragraph of the contestant's petition, and the court not being sufficiently advised, takes time. It is ordered that the time for the contestee to file his answer be, and leave is hereby given him until and including August 19th."

On August 19th Muenninghoff filed his answer and grounds of counter-contest in which, after denying the averments of the notice, he set up as counter-grounds of contest that in Meadow precinct 16 persons, naming them, who were republicans, and 6 persons, naming them, who were prohibitionists, and who had never affiliated with the democratic party, were unlawfully permitted to and did vote for Weller. That at Valley precinct 2 persons, naming them, were allowed to vote openly without first taking an oath that they were not qualified to mark their ballot.

On August 21st Weller moved the court to strike from the record the answer and counter-notice by Muenninghoff, upon the ground that it was not filed within the time allowed by law, and upon this motion being overruled, a reply was filed controverting the averments of the answer and counter-notice. After this a number of depositions were taken, and the court, upon consideration of the case, deducted from the votes received by Muenninghoff 13 votes and from the votes received by Weller 17 votes, thereby finding that Muenninghoff had received 491 votes and Weller 483 votes, and adjudged that Muenninghoff was entitled to have his name placed on the ballot as the democratic nominee for magistrate in that district.

On this appeal it is argued by counsel for appellant that the court erred in overruling the motion of Weller to strike from the record the answer filed by Muenninghoff, and in sustaining Muenninghoff's motion to strike out certain averments in the notice of contest, and in the reply which referred to alleged illegal voters whose names were not given and in counting the votes received

by Muenninghoff at St. Helens precinct, and in failing to adjudge that Weller had not received a majority of the votes.

The motion of Weller to strike from the record the answer filed by Muenninghoff was based on the ground that the primary election act peremptorily requires that the answer of the contestee shall be filed on or before the day specified in the notice, and therefore the court was without power to extend the time for filing the answer beyond the day fixed in the notice, and the motion to strike the answer from the record should have been sustained.

Section 28 of the act provides that the notice of contest "shall warn the contestee of the time and place when and where the contestee shall be required to answer and defend such contest, which shall not be less than three nor more than ten days after the service thereof," and it is argued that this provision of the statute is mandatory in the requirement that the answer shall be filed on or before the day specified in the notice, and cannot under any circumstances be filed on a later date.

We think, however that when the contestee, within the time given him by the notice of contest to file his answer, if it be as in this case less than ten days, comes into court and states reasons sufficient to induce the court to extend the time for filing the answer to a later day within the ten days, and the court does so, or the court on its own motion postpones the time in which the answer may be filed, as was done in this case, to a day within the ten days, the right of the contestee to assert his defense within the time allowed by the court should not be prejudiced or denied. It would be manifestly unjust to a contestee that he should be deprived of his right to defend when he was in court in due time to file his answer and could and would have done so except for the action of the court in giving him further time.

Whether the court could under any circumstances extend the time to file the answer beyond the ten days specified in the act, we need not express any opinion, as this particular question is not presented by this record, nor do we find it necessary to express any opinion on the question whether the contestee could in any state of case, or under any circumstances, be excused if, without the intervention of the court, he delayed filing his answer beyond the time specified in the notice or beyond the ten

days fixed by the act. We may say, however, that if the statute provided that the answer should be filed on or within a specified time, there would be much force in the argument that the court could not extend the time beyond the day named, but when the statute, as in this case, gives the contestant the right to name a day not less than three nor more than ten days after the service of the notice, we think a reasonable interpretation of it at least implies that the court may, when the time fixed in which to answer the notice is less than ten days, extend the time to a date not exceeding ten days after the service of the notice.

In support of the proposition that the time for filing the answer cannot under any circumstances be postponed beyond the date fixed in the notice, we are referred to the cases of Combs v. Eversole, 114 Ky., 222; Napier v. Cornett, 24 Ky. L. R., 576; Allen v. Brown, 144 Ky., 414; English v. Dickey, 13 L. R. A., 40, and others holding that when a contest statute fixes the time in which a pleading shall be filed, it cannot be filed at a later date, but in these cases and others which we have examined, the time in which the pleading should be filed was not extended by the court in which the case was pending, and the default was the result of the failure of the party whose pleading was due to offer it in proper time. We think the court had the right to make the order giving time, and hence the motion to strike the answer from the record was properly overruled.

Another assigned error is the action of the lower court in striking from the notice of contest the words "and others whose names were unknown to him." The effect of this ruling was to confine the contestant in his evidence to proof of the disqualification of the persons named in the notice, and to deny him the right to show that other persons not named in the notice who although not qualified to vote, were nevertheless permitted to and did vote for Muenninghoff.

The primary election act in section 28 provides that the contestant shall give notice in writing to the person whose nomination he intends to contest, stating the grounds of such contest, and the argument is made that this statute should be liberally construed so as to enable the contestant to show by competent evidence the number of illegal votes cast for the contestee, although their names are not furnished in the notice, to the end that the election may be purged of all unlawful ballots. In sup-

port of this construction we. are referred to the contest case of Tunks v. Vincent, 106 Ky., 829, in which it is said the court ruled that while the contestant should be required if he can do so, to set out in his notice the names of the illegal voters, he might show that others than those named in the notice were unlawfully permitted to vote for the contestee.

While there are in this opinion some general statements that would leave the impression that the court so ruled, these general statements have reference only to a state of case in which no motion to make the notice more specific is made, and as it appears from the opinion that the contestee did not make such a motion in that case, it is not, when read in the light of this important fact, out of line with Lunsford v. Culton, 15 Ky. L. R., 504, in which the court said:

"The names of the illegal voters are not given, or the reasons why these votes were illegal, and it would seem that this statement would scarcely apprise the contestee of the grounds of contest, so that he might be prepared to meet them. The contestant in his reply to the causes of contest, sets up similar charges, and as indefinite as those made by the contestee. * * * The testimony before the contesting board was not objected to, nor any motion made asking that the notice be made more certain and definite, and it was not until the case reached the circuit court that a motion to quash the notice was made, and no motion in fact made in that court to make this statement more definite. * * * A notice of the contest because of illegal votes being cast for the one party or the other, while it should be required to be made more definite, if objection is made in proper time, is sufficient if parties see proper to make an issue without objection and proceed to investigate the case."

We think the statute contemplates that the notice, whether it be a notice by the contestant or a counter notice by the contestee, should be so specific and direct as to give to the other party reasonable information of the grounds on which the contest is based, so that he may be prepared to defend, and when the notice is too indefinite or insufficient to furnish this information, the court, upon motion of the complaining party, if such motion is made, should require the notice to be made more specific or else entertain a motion to strike the indefinite parts from the notice. Pace v. Reed, 138 Ky., 605, Edwards v. Logan, 114 Ky., 312.

To permit a defeated candidate to make a contest on mere general charges of fraud and wrongdoing, would in many instances authorize a groundless contest and extend an invitation to every dissatisfied and defeated candidate to begin a contest in the hope that something might be developed that would change the result. The presumption is to be indulged that the election was conducted according to law and that the candidate legally entitled thereto received the certificate of election, and this presumption cannot be assailed or overcome by mere speculative charges of fraud and illegality. When an election is over and the certificate has been issued to the successful party, no person who was a candidate, and who cannot point out some certain and substantial grounds of contest, should be allowed to harass and annoy the successful candidate by a law suit or put him to the expense and trouble of defending a case without knowing what charges he must be expected to meet and answer.

Of course if both parties, without raising any objection, are willing to try the issues on an indefinite and insufficient notice or other pleading, neither of them will be heard after the case has been submitted for judgment to raise a question as to the sufficiency of the notice or pleading. But we think that when the legality of certain votes are put in issue, the notice should contain the names of the challenged voters and the precinct at which they voted, and that no others than those named in the notice or in a supplemental notice filed in seasonable time, in response to a motion to make more specific, if one is made, can be considered.

We are also of the opinion that if the original notice is not sufficiently definite and certain, that the court upon a motion to make it more specific, should give a reasonable time, keeping in mind the importance of speedy action, to make the notice sufficiently definite. Having this view of the matter, the court properly declined to permit the contestant to show that any persons not named in his notice or in the response to the rule to make his notice more specific, wrongfully voted for the contestee.

At St. Helens precinct Muenninghoff received a large majority of the votes, and it is apparent that all of the inmates of the alms house who voted cast their vote for him. It is also manifest from the evidence that Capt. Westfall, superintendent of the institution, requested the inmates to vote for Muenninghoff, and it seems that in

obedience to his wishes, which were expressed on slips of paper containing the names of the candidates he wished them to support, these inmates, most of whom were unable to mark their ballots, cast their votes. It is true that these inmates were legally entitled to vote at this precinct, and equally true that Capt. Westfall, as a citizen and voter had a right to electioneer for the candidates he supported. But while this is so, the conduct of Capt. Westfall in virtually directing the votes of these inmates cannot be approved or commended as a proper course for the head of a public institution like this to pursue. It is a right possessed by every citizen to use all legitimate means in his power to secure votes for the candidates of his choice, but this general and popular rule in politics should not be extended to embrace persons in authority at public, charitable institutions in reference to the inmates under their charge, and if there was evidence showing that Capt. Westfall exerted in any other maner than in giving these inmates slips of paper with the names of candidates written thereon, his desire that they vote for Muenninghoff or that his conduct and activity was the result of a conspiracy, we would be disposed to rule that all the votes from this institution that were cast for Muenninghoff should be deducted from his vote. But these inmates did not know any of the candidates and did not care about any of them, and the physical condition of nearly all of them was such that the officers had to mark the ballots for them. If Capt. Westfall had not given them slips of paper with the names of his candidates written thereon, or had not requested them to vote for Muenninghoff and others, it is entirely probable that many of them, when they went to cast their votes and learned for the first time the names of the candidates, would have voted for many of the persons that Capt. Westfall desired them to vote for; and under all the circumstances we think the court properly counted for Muenninghoff the votes of all these inmates that were voted according to law.

The ballots of 13 of these inmates were improperly and illegally voted, and these 13 votes the court deducted from the vote obtained by Muenninghoff, but it is insisted that he should have deducted the votes of 4 other inmates, whose names are given, because of the illegal manner in which they voted. We have examined the evidence in respect to these voters, and think that with the exception of one of them, the court ruled correctly. As to this one,

we are inclined to the opinion that his vote should not have been counted, but whether counted or not, his vote would not have affected the result.

The lower court also deducted from the vote received by Weller 17 votes, upon the ground that the voters were Republicans and Prohibitionists who did not affiliate with the Democratic party within the meaning of section 19 of the primary act. Under the rule as laid down in Heitzman v. Voiers, 155, Ky., 39, concerning persons who are entitled to vote in Democratic primary elections, we are of the opinion from an examination of the record that no one of these 17 voters should have been allowed by the officers of election to vote in the Democratic primary, and therefore their votes were properly subtracted from the vote of Weller.

Upon the whole case we think the judgment appealed from is correct, and therefore it is affirmed.