## First National Bank of Hazard v. Combs et al.

(Decided March 13, 1931.)

P. T. WHEELER and J. E. JOHNSON, JR., for appellant.

W. A. STANFILL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to the dates herein involved there was an operating bank in the city of Hazard, Ky., incorporated and doing business in the name of "First National Bank of Hazard." Some time in the latter part of July, 1925, defendants and appellees, J. F. Combs and F. A. Johnson, borrowed from it $3,000, and executed their note for that amount. It was renewed from time to time with the interest being paid until July 7, 1928, which appears to be the last renewal, and it was due 120 days thereafter, or on November 3, of that year. At that time the affairs of the lender were in somewhat of a precarious condition, and they did not improve thereafter.

A new bank was organized for the purpose of operating in the same city under the name of "First National Bank in Hazard," and it will hereinafter be referred to as the "new bank." On October 18, 1928, a written

contract was entered into between the old and the new banks whereby the latter agreed to assume the payment in full of the depositors of the former, in consideration of it assigning and transferring to the new bank selected assets by it sufficient in amount to indemnify it for the obligations that it assumed for the old·bank. It selected notes and bills payable to the old bank and which were duly indorsed and delivered to it for that purpose, among which was the note hereinbefore referred to, and on that day the new bank began operations in the same 'building theretofore occupied by the old bank.

It does not appear that the note of defendants was ever renewed after it went into the hands of the new bank; but it was not paid, and on January 10, 1930, the appellant and plaintiff below (the new bank) filed this action against appellees and defendants below in the Perry circuit court to recover judgment thereon. An original and two amended answers were filed by defendants, in which it is attempted to be averred, in substance, that the consideration of the note when first executed was to obtain money to be corruptly used in the primary election in 1925 in behalf of a candidate for the Republican nomination for the office of sheriff of Perry county, and that the old bank had knowledge of such purpose, and that the new bank on October 18, 1928, when it obtained possession of the note, in the manner hereinbefore stated, also had knowledge of that fact. It was further alleged that the new bank was not the holder of the note in due course, because (a) it had knowledge of its consideration at the time it obtained the note, and (b) that the transfer to it was not legally completed until some time in January, 1929, after the note had matured, for reasons hereinafter stated.

Written replies were filed to the original petition and to its third amendment, and the second one was controverted by an order of court, although counsel for defendants says in his brief that the averments in that pleading were nowhere controverted, but the controverting order was made on May 20, 1930, and is in these words: "Then came the plaintiff and controverted the allegations of the second amended answer of J. P. Combs and F. A. Johnson of record," and which is on page 15 of the transcript filed in this court. We have examined the pleadings and find the other contention, made by the same counsel, that the written replies do not controvert material allegations of defendants' answers (except the

second one), to be equally unsubstantiated, except as hereinafter noticed with reference to the time when the note was legally transferred to the new bank. At the trial before a jury, it, under the instructions given by the court, returned a verdict in favor of defendants, upon which judgment was rendered dismissing the petition, and to reverse it plaintiff prosecuted this appeal.

We have concluded to first determine the contention that plaintiff did not become the holder of the note until after its maturity. In the written contract duly executed by the proper officers of each bank it was provided that the contract should be submitted to the directors of each institution for their ratification, and which was not formally done until January, 1929, long after the new bank had commenced operations and after the assets it had selected from the old bank had been duly transferred to it, including the note sued on. But the new bank agreed to and did satisfy the depositors of the old bank in consideration of such transfers, and the obligations so transferred, thus became pledged to it to secure the amount it so paid, even if the contract had been rejected by the directors of either institution. Under the circumstances, under the provisions of section 3720b-27 (a part of our Negotiable Instruments Act), it was a holder in due course to the extent of its lien. It, therefore, becomes unnecessary to discuss the question raised, based upon the belated ratification by the directors, but which we are clearly of the opinion is without merit, since the ratification related back to the date of the contract and ratified all that had been done under it.

We will, therefore, determine the case upon the meritorious issues of fact and law involved and which are: (1) Whether the note was actually executed to obtain money for the alleged vicious purpose as contained in the defensive pleadings; (2) conceding, though not determining, that it was executed for that purpose with knowledge of the payee, then did the new bank have notice thereof on October 18, 1928, when it became the holder of the note; (3) if it did not, will the interposed defense prevail against it as such holder in due course; and (4) error in giving and refusing instructions—each of which will be discussed and determined in the order named.

In determining issue (1) it is doubtful if defendants' pleading is sufficient in averments to properly present the relied on vicious consideration of the note,

even in the hands of the original holder, since it is not specifically alleged that the money was borrowed for the sole purpose of bribing or corrupting voters, and that it was used for such purposes. It is averred that the borrowers, as well as the president of the (old) bank, intended and knew that the proceeds of the note were to be used in the election in the interest of Richmond Combs, but, since money may lawfully be used in the interest of one's candidacy for office, it was incumbent upon the pleader to specifically allege an unlawful and vicious intended purpose and which was known to the lender. There are some sporadic and innuendo allegations which would point in that direction, but, we repeat, there are no direct and specific ones to that effect. We have concluded, however, to pass that question of pleading and briefly notice the testimony on that issue, and which we might state generally, is in the same confused condition and contains the same absence of specific application as do the pleadings of defendants. It is true that one, or perhaps two, witnesses say that they used some money in paying a few floating voters to cast their ballots for Richmond Combs, but they named no such voter, nor did they say what amount of money they so used, or that any other person did even as much as they, and, we repeat, it is considerably doubtful if the proof was sufficient to establish the attempted defense. However, we have also concluded to pass this branch of the case without further comment.

On issue (2) the evidence heard at the trial wholly failed to show that the new bank possessed any knowledge whatever of the alleged vicious consideration of the note if it had been properly alleged and proven to be such. Mr. Morgan, who was president of the old bank, and the only officer whom the testimony connected with the lending transaction so as to impart knowledge of the intended purpose and application of the proceeds of the note, denied any such notice on his part, although defendants' testimony strongly indicates that he may have known of such purpose. None of the other officials or even directors of the old bank had any such knowledge, and no testimony introduced at the trial remotely connects any of them therewith, even if they were such officials as that notice to them would be notice to the bank. It is, therefore, also extremely doubtful if even the old bank had knowledge of the intended purpose of the application of the proceeds of the note; but, conceding for the

purpose of this case that it, through its president, Mr. Morgan, did possess such knowledge, there was no evidence tending in the remotest degree to prove that the new bank at the time it acquired the note knew any such fact or facts. Mr. Morgan was neither a stockholder nor an official of any kind in the new bank, and the only persons connected with the old bank, and who were also interested in the new one, were two or maybe three of the directors of the old bank, and its cashier later served for a while in the new bank as assistant cashier. None of such subordinate officers, nor any of the stockholders of the old bank who also held stock in the new one, had any knowledge of the alleged vice in the note when it was taken over by the new bank, or at any time until the defense was made in this, and another one in the same court involving the same question, and which was long after the new bank was organized and commenced business, at which time it became its holder. We will not enter into a discussion of the intricate question of imputed knowledge of officers of a corporation to their principal, since, as we have seen, the testimony is not sufficient to present it; there not even being any proof of knowledge of the two or three directors of the old bank of the alleged purpose for which the proceeds of the note were to be applied. But if it were otherwise, then when they became like officers in the new bank their knowledge would not be imputed to it. The case must, therefore, be determined upon the theory that the new bank when it became the holder of the note in the manner hereinbefore stated possessed no knowledge of the defense under consideration.

In disposing of issue (3) it is to be remembered that section 3720b-57 (part of our Negotiable Instruments Act) prescribes that a holder in due course of a negotiable instrument takes it free from any defect of title of prior parties "and free from defenses available to prior parties among themselves," etc. The general rule is, that such statutes eliminate all defenses which would be good as between the original parties as against a holder in due course. It is thus stated in 8 C. J. 767, sec. 1032:

"Except where it is otherwise provided by statute, the fact that a bill or a note is illegal, either because of defects in its execution, or because of the illegality of its consideration which is either malum

in se or malum prohibita, is not a defense against a bona fide holder in due course, even where it is given in direct violation of a statute, or where the consideration is against public policy, unless a statute expressly or by necessary implication declares the contract or instrument absolutely void. And a statute making it a crime to take notes in a prohibited transaction does not make the notes void in the hands of innocent purchasers, although the person who violates the statute commits a crime. The same is true where the act is forbidden under penalty of a fine.''

A large number of domestic cases will be found cited in the notes to section 3720b-57, supra, of our Statutes, in accord with that text, and there are none to the contrary. Some of them are Berryman v. Harris, 196 Ky. 21, 244 S. W. 68; Bell v. Duncan, 196 Ky. 574, 245 S. W. 141; Owsley Co. Deposit Bank v. Burns, 196 Ky. 358, 244 S. W. 755; Barnard v. Napier, 167 Ky. 824, 181 S. W. 624; Citizens' Bank v. Crittenden Record-Press, 150 Ky. 634, 150 S. W. 814; Davidson v. Falls, 215 Ky. 368, 285 S. W. 209; and others cited in those opinions. As said, there are none to the contrary. However, notwithstanding the statute denying such defenses in such cases, if a negotiable instrument is made void by express enactment when executed in a manner violative of the statutory provisions, or for a denounced consideration, the holder in due course is not immune under the Negotiable Instrument Act from the defense that the note is void as being contrary to such statutory declarations. Stating that rule, the text in the volume of Corpus Juris referred to, page 768, sec. 1033, says:

''If the instrument or contract is declared 'void' by statute it cannot be enforced even by a bona fide holder, and this is so even in those states where the Negotiable Instruments Law has been enacted. It has been held that the statute need not expressly declare the instrument void but that it is sufficient if it does so by implication; but the tendency of the courts is to protect bona fide holders and to construe a statute as not making the instrument void, except in a clear case. Thus a statute making a consideration 'illegal' is not equivalent to making the instrument 'void.' So a statute which merely pro-

hibits the business or imposes a penalty, where it does not declare a bill or note based on such a prohibited transaction absolutely null and void, does not affect the defense.''

Domestic cases sustaining that text are Citizens' Bank Case, supra; Lawson v. First National Bank of Fulton, 102 S. W. 324, 31 Ky. Law Rep. 318; Alexander & Co. v. Hazelrigg, 123 Ky. 677, 97 S. W. 353, 29 Ky. Law Rep. 1212; Nunn v. Citizens' Bank, 107 Ky. 262, 53 S. W. 665, 21 Ky. Law Rep. 961; Bohon's Assignee v. Brown, 101 Ky. 354, 41 S. W. 273, 19 Ky. Law Rep. 540, 38 L. R. A. 503, 72 Am. St. Rep. 420. Some of those cases had under consideration that class of instruments known as "peddler's notes" and which did not have the statutory required indorsement thereon of "peddler's note" and without which our statute declares the note void. Others of those cases had under consideration obligations the consideration of which was a gambling debt, and which instruments are expressly denounced as void by section 1955 of our Statutes. So that, unless we have a statute denouncing notes executed in consideration of money to be corruptly used in an election as void, the defense herein interposed, though available between the original parties, is not so as against plaintiff, a holder of the note in due courses. The only statute upon the subject is section 1565-1 of our present Statutes and which is a part of what is generally referred to as our "Corrupt Practice Act"; but, it is doubtful if the terms of that act embrace a corporate lender of money. Conceding, however, for the purposes of this case that it does, the statute nowhere by either express or implied terms renders a note executed for any such consideration void. It only denounces such acts as being illegal and makes it a misdemeanor punishable by fine for the perpetrator to engage in them. Nor does any domestic statute with reference to "Bribery" so characterize any note executed for such purpose. We, therefore, conclude that the defense attempted to be interposed is not available against plaintiff, whom we have determined is a holder in due course of the note sued on.

Lastly, under issue (4) it is insisted by plaintiff's counsel that the court misinstructed the jury and failed to properly instruct it as requested by them, and which is manifestly true. It first erred in not sustaining plain-

tiff's motion for a peremptory instruction, as clearly appears from what we have already said in this opinion; but having overruled that motion it gave on its own motion instruction No. 1, which submits to the jury only two of the material facts involved in the case and which were: Whether the note was given for the alleged unlawful purpose, and, whether the old bank at the time it advanced the money had knowledge of that purpose. Nowhere did it submit the issue as to whether the new bank was a holder of the note in due course, including whether it had knowledge of the alleged unlawful consideration if such were the fact. An instruction was offered by plaintiff covering such omissions, but the court refused to give it to the jury, and upon what ground or for what reason is not made apparent by the record. It surely requires no argument to demonstrate that the court was in error in these particulars, since the acquisition of the note under such circumstances as would make plaintiff a bona fide holder in due course and without knowledge on its part of the alleged vice in the consideration were among its most prominent defenses, and we acknowledge our inability to fathom the reason why the court would not submit those issues when the evidence was not merely contradictory with reference to them, but was of such a character as to authorize the court, as we have seen, to direct the jury to find both of them in favor of plaintiff.

Wherefore, the judgment is reversed, with directions to set it aside, to sustain the motion for a new trial, and, if the evidence should be sustaintially the same on another trial, to then direct the jury to return a verdict in favor of plaintiff, and for other proceedings consistent with this opinion.