### Roberts v. Sturgill.

(Decided Nov. 13, 1934.)

J. B. CLARKE and H. R. BURKE for appellant.

COMBS & COMBS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

George T. Roberts, setting up numerous grounds of contest, challenged the certificate of election of T. B. Sturgill to the office of circuit court clerk of Floyd county, issued to him on the returns of the election held in November, 1933.

The judgment of the circuit court being adverse to him, Roberts prosecutes this appeal, confining himself in his brief addressed to this court, to the ground that Sturgill was guilty of violating the Corrupt Practices Act (section 1565b-1 et seq., Kentucky Statutes). The basis of this charge, as it is presented, is that Sturgill and Dave Cooley were opposing candidates at the August primary, 1933, for their party's nomination for the office in contest, when they entered into a written agreement, in the pursuance of the terms of which Cooley withdrew and agreed to, and did, continue to support Sturgill for the nomination and at the final November election. This contract reads:

"This agreement, made and entered into by and between T. B. Sturgill of the first part, and D. C. Cooley, (Dave Cooley) of the second part.

"Witnesseth: That, whereas, the parties hereto are candidates for the Democratic nomination for the office of Circuit Court Clerk of Floyd County, Kentucky, at the Primary election to be held August 5th, 1933, and the parties having agreed that T. B. Sturgill make the race and that Dave Cooley retire from the said race.

"Now therefore, the parties agree as follows: That in event T. B. Sturgill is nominated and elected Circuit Court Clerk he promises and agrees to appoint the said Dave Cooley his chief deputy clerk for a term of six years beginning in January, 1934, when the officers elected in November qualify next January. It is further agreed that the first party and second party shall agree as to the appointments of any other deputies or assistants in the clerk's office and agree between themselves as to the running of said office. It is agreed that the compensation of Dave Cooley shall be one-half of the net receipts of the office, after payment of expenses of other assistants and help has been deducted. Said compensation shall be paid to second party by first party monthly or as the receipts of the office are collected by first party.

"In event of the death of Dave Cooley the first party agrees to appoint Josie Jane Hall, his sister, shall be appointed chief deputy clerk and shall succeed to all the rights of Dave Cooley and be entitled to receive the compensation of one-half of the net proceeds of the said office as aforesaid. In event T. B. Sturgill should die then and in that event the parties hereto agree that they will recommend that the Circuit Judge appoint a Circuit Clerk in harmony with this agreement.

"Signed in duplicate this August 2, 1933. .

"T. B. Sturgill [Signed]
"Dave Cooley [Signed]

"Witnesses:

"R. L. Ray [Signed]
"R. B. Turner [Signed]

In the performance of the contract, Cooley withdrew, and with an intensity and the aid and assistance

of his immediate relatives, wholeheartedly espoused the candidacy of Sturgill and worked "like a Trojan" up to and at the November election, for the election of Sturgill who defeated Roberts by a majority of between 2,700 and 2,800, excluding the ballots of certain precincts which apparently were tampered with after they were returned to the office of the county court clerk and for this season not counted in this race.

Sturgill filed an answer traversing Roberts' petition and set up countergrounds of contest. Thereafter Roberts appeared in open court and entered a motion to require Sturgill to make his answer and counterclaim more definite and certain. Also, filed a demurrer to certain paragraphs of Sturgill's answer and counterclaim. Later, on his motion, the court entered an order submitting the cause on a general demurrer to the petition, "and upon all the pending motions." At his instance, the demurrer to the petition was overruled. Thereupon, Roberts filed a motion, supported by his own affidavit, requesting the presiding judge to vacate the bench and not to preside at the trial of the contest.

Section 971-6, Kentucky Statutes, authorizes a party to an action, or proceeding, pending in court, to "file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial."

We have often ruled that the affidavit of the movant should contain the facts upon which he bases his belief that the judge will not give him a fair and impartial trial, and the facts stated therein must be of such character as would prevent the judge from properly presiding in the case and they should be made with such certitude and in such manner that would subject the party making them to a criminal punishment, if the charges are false. White v. Jouett, 147 Ky. 197, 144 S. W. 55; Combs v. Brock, 240 Ky. 269, 42 S. W. (2d) 323; Neace v. Com., 243 Ky. 149, 47 S. W. (2d) 995; Conn v. Commonwealth, 245 Ky. 583, 53 S. W. (2d) 931. And the judge of the court cannot inquire into the truth or falsity of the statements in the affidavit. Neace v. Com., supra; Nelson v. Commonwealth, 202 Ky. 1, 258 S. W. 674.

The affidavit of Roberts contains the statement that the presiding judge was a candidate on the ticket of the contestee at the regular November election, 1933, and that the affiant was a candidate on the opposing ticket for the office of circuit clerk.

It is a matter of general knowlege that a candidate for circuit judge on the ticket with his party's candidates is afforded an opportunity to acquire and have extraordinary knowledge of the efforts of all of the candidates on the ticket with him to secure his and their election, and, if forbidden practices are engaged in by the other candidates on the ticket, they are necessarily within his knowledge, and a mental impression thereof can scarcely escape him. And where a contest subsequently arises, nature has so made man that the judge, after he is elected, would be the last person to disclose arrangements or manipulations frequently indulged in by party candidates, especially if the same had inured to his interest, to promote disclosure and a spirit of correction, lest in the event it should reach him. It is to his interest to protect and not disclose the abuses of his associates of the Corrupt Practices Act on the ticket as so many outworks to protect the citadel within which he officially dwells, though his office is not involved in the contest; and in this species of fortification, he, as a part of the whole, has such a common dependence that it is neither to be expected that he and his associates on the ticket will attack each other and disclose, if any, violations of the Corrupt Practices Act. To make it absolutely assured that every contest case will be fairly and impartially tried, in such a manner as not to beget suspicion, the trial judge, who was an associate on the ticket with the contestant or contestee at the election involved, should voluntarily retire from the bench and decline to try the contest. However, we do not decide that his failure to do so, especially in this case, is cause requiring him to vacate the bench or that the same constitutes a ground of reversal; nor is it necessary so to decide for the reasons hereinafter set forth.

The right of a party to an action or proceeding to avail himself of the privilege of filing an affidavit authorized by section 971-6, and requesting the retirement of the presiding judge, may be waived.

In the case of Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239, 240, when considering the subject of waiver of a right to request the trial judge to vacate the bench, we said:

"The rule is that an objection to the trial judge raises in effect a question of jurisdiction, and the objection, to be available, must be made before an

appearance to the merits of the action or the submission of preliminary motions by either party preparatory to a trial."

This rule of practice has been steadfastly adhered to by the court. See Kentucky Central R. Co. v. Kenney, 82 Ky. 154; German Ins. Co. v. Landram, 88 Ky. 433, 11 S. W. 367, 592, 10 Ky. Law Rep. 1039; Vance v. Field, 89 Ky. 178, 12 S. W. 190, 11 Ky. Law Rep. 388; Pace v. Reed, 138 Ky. 605, 128 S. W. 891; White v. Jouett, 147 Ky. 197, 144 S. W. 55; Adams v. Slatin, 225 Ky. 135, 7 S. W. (2d) 836; Allen v. Bach, 233 Ky. 501, 26 S. W. (2d) 43.

Pace v. Reed, supra, was an election contest and the contestant permitted the court to pass on a demurer to the petition and the contestee filed a motion to strike certain parts therefrom, and also his answer. It was held the contestant thereby waived his right to require the judge to vacate the bench by reason of alleged disqualification. These cases rule Roberts' request to the judge to vacate the bench.

Fox v. Petty, 235 Ky. 240, 30 S. W. (2d) 945, 946, involved a contract, whereby the elected sheriff, previous to his election, and in order to bring about his election, entered into the contract with an individual by which it was agreed that this individual should submit to the sheriff-elect the names of ten persons whom the sheriff agreed, in the event of his election, he would have appointed deputies by the county court. The county judge on the presentation of one of the list asserted the contract between the sheriff-elect and the individual was within the purview of section 3740, Kentucky Statutes, which forbids the selling or farming an office and imposes a penalty therefor, and declined to appoint the selected individual, a deputy to the sheriff. The sheriff applied to the circuit court for a writ of mandamus which was granted, directing the county judge to appoint the deputy selected from the list of names agreed upon by the sheriff before his election with the individual furnishing the list. On an appeal to this court, we had no difficulty in reaching the conclusion that the alleged contract between the sheriff and the individual was contrary to public policy and therefore void. We said:

"Whether it contravenes section 1565b-3, Kentucky Statutes, and whether Petty's [the sheriff-elect]

failure to file a statement of the alleged agreement before and after the primary was a violation of section 1565b-4, Kentucky Statutes, we do not determine.''

The penalties attached to the violation of the Corrupt Practices Act (section 1565b-1, et seq.) are a loss of office in case of contest and punishment by a fine.

Not every contract which a candidate for an office enters into comes within the purview of the Corrupt Practices Act, though it may be within the meaning of section 3740.

In Van Meter v. Burns, 176 Ky. 153, 195 S. W. 470, 472, we reviewed the several sections of the Corrupt Practices Act and definitely construed them as they pertain to contracts of candidates for office. We said:

''One of the grounds of contest is that appellees Burns, Marton, and Graves promised certain persons offices or positions under the city government in consideration of their support in the election. In some of the states the Corrupt Practice Acts have clear and explicit provisions prohibiting promises of appointment in consideration of the support of the persons to whom the promises are made. The only provision of our act bearing on this question is section 3, above quoted. The first part of that section relates solely to the expenditure, promise, loan, etc., of money or other thing of value. Clearly, 'other thing of value' means property, or something having an intrinsic value that may be measured in money, and does not include a mere office or position which has none of the qualities of property. That being true, the question turns solely on the construction of the following language:
'' '* * * Or to agree or enter into any contract with any corporation, association or person to vote for or support any particular thing or measure in consideration of the vote or support, moral or financial, of any such corporation, association or person, and it shall be unlawful for any corporation, association, or person to demand that any candidate for office shall promise or agree in advance or shall make any contract, oral or written, to support any particular individual, thing or measure, in consideration for the vote or the support, financial or

moral, of such corporation, or person, in any election, primary or nominating convention,' etc.

"It will be observed that while it is made unlawful for any corporation, association, or person to demand that any candidate for office shall promise or agree in advance or shall make any contract, oral or written, to support any particular individual, thing, or measure, in consideration for the vote or the support, financial or moral, of such corporation, or person, in any election, primary or nominating convention, that part of the language referring to the candidate himself omits the words 'any particular individual,' and only makes it unlawful for him to vote for or support 'any particular thing or measure' in consideration of the vote or support, moral or financial, of any such corporation, association, or person. It has been a long established custom in this state for certain candidates for office to announce their deputies or appointees beforehand, and for such candidates and prospective deputies or appointees to make their races together. If the Legislature had intended to prohibit this practice, a few simple words added to the act would have accomplished that purpose. Instead of doing so, they merely prohibited the candidate from entering into any contract with any corporation, association, or person to vote for or support 'any particular thing or measure.' It is evident, therefore, that the language of the statute was chosen with great care, and that in providing a prohibition against the candidate the words 'any particular individual' were purposely omitted. Under these circumstances, we conclude that the Legislature never intended to make it unlawful for a candidate to agree to appoint a particular person to an office or position, or to support a particular person for any office or position, in consideration of the influence or support of such person in the election. This conclusion makes it unnecessary to consider the evidence bearing on this phase of the case."

Our reasons stated in the Van Meter Case are conclusive in the present one. The material distinction between the contract therein and that in the present one is, the contract here is more elaborate and comprehensive than, yet of like purpose to, that involved in that

case. For the reasons stated in it, we are impelled to hold that the contract in the present one does not violate section 1565b-1 et seq.

Wherefore, the judgment is affirmed.