## Brock et ux. v. Wilson.

April 24, 1942.

J. B. Wall for appellants.

E. L. Morgan for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The appellee, William Wilson, plaintiff below, sued Hiram M. Brock and wife, Ona Brock, for a balance of $1,000 with 6% interest from July 6, 1937, due on a $2,000 note they executed to him. The verdict was for the full amount sought and the Brocks appeal from the judgment entered thereon.

The answer and counter-claim as amended averred that when Wilson loaned the $2,000 to the Brocks he knew the money was to be used to bring about the nomination and election of Hiram M. Brock to the office of Judge of the Harlan County Court; that Wilson knew this sum could not be legally expended in the election and that he knew it was to be used for the purpose of bribing electors to vote for Brock. Defendants further averred it was agreed between them and Wilson that if Brock secured the nomination and was elected in November he would employ Wilson's son as a clerk in the county judge's office; but if Brock failed to secure the nomination or was defeated in the final election, they were to pay only one-half of the note and Wilson would lose the other half; that Brock was defeated in the primary and that the $1,000 defendants had paid on the note was in complete satisfaction thereof. A reply and an order controverting completed the issue.

Only three persons testified as to the loan transaction, the two defendants and the plaintiff. The testimony of the defendants supported the allegations of their answer and counter-claim, except there was no evidence that the money was used to bribe voters, or that it was to be used in violation of Section 1565b-16, Kentucky Statutes. Wilson flatly denied that he had loaned the money to be used for election purposes or that he knew it was to be used illegally, or that he entered into an agreement with Brock that his son was to be given employment if Brock was elected, or that if Brock did not obtain the office, the defendants would be required to pay only one-half of the note. The only testimony as to how the money was to be used and as to Wilson's knowledge of the use it was to be put to was given by Brock, and reads:

"Q. Mr. Brock, who was the $2000 you got from Mr. Wilson really used for? A. Well, according to our agreement it was—

"Plaintiff objects. That is not in answer to the

question. A. It was used to further my interest in the election.

"Q. Was all of it used that way? A. Yes, I gave it to my friends.

"Q. Did Mr. Wilson know about the use that money was being put to? A. He sure knew all about that.

"Cross Examination:

"Q. You went into details about that, didn't you? A. To extend that question, I would like to say that was the first thing I ever discussed with Mr. Wilson when I borrowed the money was to use it in that campaign."

There is no evidence in the record to support the allegations of the answer and counter-claim that this money was used to bribe voters or that Wilson had knowledge that it was to be put to such use when he made the loan. The testimony of Brock that he gave this money to his friends to further his interest in the election falls far short of saying it was used to bribe voters, since his friends could have used it for legitimate purposes, or not used it in the election at all, and the court properly refused defendants' proffered instruction covering this point. It was not only incumbent upon defendants to allege and prove an unlawful and corrupt intended purpose, but that same was known to Wilson when he made the loan. First Nat. Bank of Hazard v. Combs, 237 Ky. 834, 36 S. W. (2d) 644.

Harlan County does not contain a city of the third class, hence under Section 1565b-16, Kentucky Statutes, no candidate seeking the nomination for a county office in that county may legally expend in excess of $1,000 in the primary, and this sum may not be legally exceeded in the final election. Defendants urge in their brief that Wilson was charged with the knowledge of this statute and that when they pleaded he had knowledge the $2,000 was to be illegally used and when Brock testified, "the first thing I discussed with Mr. Wilson when I borrowed the money was to use it in that campaign," an issue was formed for the jury to determine whether or not Wilson had knowledge his money was loaned for an illegal purpose. It is a sound and settled principle of law that no contract can be enforced between the parties thereto if the consideration supporting it consists in a violation of

law. 3 R. C. L., Section 146, p. 950. This court has several times written that money knowingly loaned to be corruptly used in an election cannot be collected. Hale v. Harris, 91 S. W. 660, 28 Ky. Law Rep. 1172, 5 L. R. A., N. S., 295; Campbell v. Offutt, 151 Ky. 229, 151 S. W. 403; Rose v. Finley's Ex'r, 250 Ky. 769, 63 S. W. (2d) 948.

Upon turning to defendants' pleading, we find it avers that the $2,000 "was to be used in bringing about the *nomination and election* (our italics) of the said Hiram M. Brock to said office and plaintiff knew that the consideration for said note was for an illegal purpose." As Section 1565b-16 allows not exceeding $1,000 to be expended in the primary and the same sum to be expended in the final election, Wilson in lending the $2,000 to Brock was not charged with knowledge that the statute was to be violated, since the allegations of defendants' pleading was that the money was to be used in both the primary and the general election. Also, Brock had to be both nominated in the primary and elected in November before his alleged agreement with Wilson to employ the latter's son could be carried out. Under the pleading and proof Wilson was not charged with knowledge that the money he loaned the Brocks was to be put to an illegal use.

Brock's testimony that this money "was used to further my interest in the election"; "I gave it to my friends"; "the first thing I ever discussed with Mr. Wilson when I borrowed the money was to use it in that campaign"; was not equivalent to testifying that this $2,000 was to be spent in the primary election with Wilson's knowledge. When one enters a political contest his earnings usually cease or become greatly diminished, yet personal and family expenses continue and must be met. Meeting such expenses furthers the interest of the candidate and should he fail to do so, he could not hope for success at the polls. Likewise, payment of debts, meeting personal contracts and caring for business and charitable obligations tend to further the candidate's chances of election and all such call for considerable outlay. It cannot be doubted that Brock could have used this $2,000 "to further my interest in the election" and could have "used it in that campaign," and could have "given it to my friends" without spending directly in the election more than the statutory limit of $1,000.

The burden was on the defendants to prove that this money was loaned by Wilson with the knowledge that it was to be illegally used and an intimation or conclusion by Brock that it was to be so used with Wilson's knowledge does not measure up to the quality of proof. The testimony of Brock fails to show that this money was to be expended for illegal purposes. An indirect expenditure, such as purchasing an automobile, might have furthered his interest in the election and Brock might have concluded that such an expenditure was for campaign purposes. But such would not be the fact. The expense of operating a car in a campaign is a proper election expense, but the purchase price of a car is not, because it is still in existence and is just as valuable after the campaign as it was before, natural wear and tear excepted. It was said in Taylor v. Nuetzel, 220 Ky. 510, 295 S. W. 873, on page 883, that not every expense connected with an election (such as might be incidental to a supplemental registration, or the equipping of headquarters) should be charged against the candidate. When Brock testified that he gave this money to friends, the court cannot surmise it was given to them to be used directly in the election.

We agree with the learned circuit judge that there was no proof that this loan was to be used in the primary election in an amount which would violate Section 1565b-16, Kentucky Statutes. Certainly there was no proof Wilson knew it was to be so used and the court correctly refused to submit the question to the jury.

Under an appropriate instruction the jury found for Wilson on the issue as to whether or not he made the loan to defendants on the promise of Brock to give employment to his son in the event Brock was elected. Therefore, it is unnecessary for us to determine whether or not such a transaction violated the Corrupt Practices Act and made the consideration of the loan an illegal one, or whether it falls under the rule stated in Roberts v. Sturgill, 257 Ky. 194, 77 S. W. (2d) 789, that a promise to appoint a subordinate in consideration of his support is not a violation of the Corrupt Practices Act, and we refrain from so doing.

The judgment is affirmed.

Whole Court sitting.